## CHARLES H. ATHERTON *versus* STEPHEN JOHNSON.

Where a town owns a lot of land, and, by vote, assents to a proposed exchange of it, the title to the land does not thereby pass, nor is the town afterwards estopped to claim the title.

Possession of land, by consent of the true owner, is not adverse possession ; but whether the possession was taken and retained by such consent, or under any other circumstances, indicating a possession not adverse, is a question of fact.

If a widow and her minor children retain possession of land, which was occupied by their father, it is presumed to be in their behalf ; but this presumption may be rebutted by other facts.

The confiscation acts, passed by the legislature during our revolution, are binding.

THIS was a writ of entry, in which the demandant counted on his own seisin of lot No. 9, in the 3d range of lots in Dunbarton.

The tenant entered a disclaimer as to part of the premises, and pleaded the general issue as to the residue.

At the trial here, April term, 1818, it appeared in evidence, that the premises were originally granted by the Masonian proprietors to Starkstown, now Dunbarton, for a school lot ; that in A. D. 1761, *William Stark* proposed to exchange lot No. 12, in the same town, for these premises ; and thereupon, that the proprietors of the town voted " to " exchange the said lot No. 9 in the 3d range for lot No. " 12 in the 4th range with *Wm. Stark*, provided he would " purchase the said lot No. 12 for the proprietors, to lay for " a school lot forever."

About this time *Wm. Stark* entered into possession of lot No. 9, cleared a portion of it, erected a log house, and resided there till, in A. D. 1776, he fled to the British troops, then waging war with the United States.

*Wm. Stark* did not purchase lot No. 12 till Aug. 26, 1765, when it was conveyed to him and his heirs by *John Stark*. In December of the same year, the Masonian proprietors voted to confirm the proposed exchange. But no other evidence whatever was offered of any conveyance of lot No. 9, by the proprietors of the town to *Wm. Stark*, or of lot No. 12, by *Wm. Stark*, to the town.

It further appeared, that when *Wm. Stark* fled to the enemy he left upon the premises his wife and five minor children, viz. *Mary, James, Stephen, Thomas*, and *William* ; that in A. D. 1778, the legislature of New-Hampshire con-

Atherton
*vs.*
Johnson.

fiscated all the estate of *Stark*, on account of his being a refugee, and prohibited his return ; that they inventoried and took possession of his estate, including therein lot No. 12, but not No. 9 ; that *Stark* died in A. D. 1779 ; that his widow and children, before mentioned, continued to reside on lot No. 9, till about A. D. 1780, when *Mary* married and removed ; that *Thomas* and *Stephen* left it about A. D. 1786, and the younger children at a period still later ; that the widow, though re-marrying, did not remove from the premises till A. D. 1812 ; that in A. D. 1795, the legislature passed an act to vest in *Thomas, William, Mary,* and *Stephen* all their father's estate, on condition they gave good security to pay his just debts ; that *Stephen* took out letters of administration, and gave such security ; and that he inventoried this lot No. 9, and in A. D. 1797, as well as in A. D. 1800, he and some of the other children, together with the mother, conveyed a part of this lot as if jointly interested in fee, though from other evidence it seemed she had often claimed a separate and sole interest in fee in the whole lot.

In 1797, the town of Dunbarton brought a writ of entry against her alone for the whole lot, and judgment was eventually rendered in her favor. In A. D. 1809, also, she was disturbed in her possession by *Thomas,* and having commenced a writ of entry against him, recovered judgment, Oct. term, 1810. But early as 1802, *Stephen* conveyed an undivided fifth of lot No. 9 ; and in 1808, *Thomas* conveyed another fifth, and the demandant claimed under those conveyances.

The tenant claimed under the town of Dunbarton, which, in April, A. D. 1812, having procured a guardian to be appointed over the widow as a spendthrift, obtained license and sold this lot as her property.

On these facts, a verdict for two-fifths of the premises in issue was by consent taken for the demandant, subject to further advisement. The cause having been continued nisi, judgment was rendered at Grafton, May Term, 1819.

*Atherton*, for himself.

*J. Smith*, for the tenant.

WOODBURY, J. The tenant is in possession of the premises, and consequently the demandant cannot recover them without evidence of a better title in himself.

In A. D. 1761, the title is admitted to have been in the town of Dunbarton. The demandant contends, that, afterwards, the town either conveyed their title to *Wm. Stark*, under whose heirs the demandant claims; or that, afterwards, those heirs acquired a title to the premises by adverse possession.

As to the first point, we think, that the proposition by *Wm. Stark* to exchange lot No. 12, for these premises, and the acceptance of that proposition by the town, and the confirmation of it by the Masonian proprietors, did not change the title. These acts amounted merely to an executory agreement to exchange and not to an exchange itself. 2 *John. Cases* 223.—7 *John. Rep.* 285.—10 *John. Rep.* 246.—9 *John. Rep.* 35, 330.—13 *John.* 235.

Indeed, when the town entered into the agreement, *Wm. Stark* had not the power to make the exchange; he did not own lot No. 12 till some years after; and no deeds appear ever to have been executed by either party of either lot.

It is not necessary to decide, whether ancient proprietors of land in New-England cannot, by express vote, without any deed, either pass a title to the land, or estop themselves afterwards to claim one. 3 *Mass. Rep.* 352, *Adams vs. Frothingham.*—12 *ditto* 415, *Springfield vs. Millar.*—*Proprietors of Dunstable vs. Blood*, (Hills. ss. Apr. 1804.) Because the vote in this case was on the sole condition, that lot No. 12 should be conveyed to them by *Wm. Stark,* " as a school lot forever;" and hence, if the vote was intended as any thing more than a treaty for an exchange, it would not affect the title till the condition precedent was fulfilled.

It ought to be remarked, however, that we discover some facts in this case, which might warrant a jury in presuming, that a conveyance was in fact made by *Wm. Stark* to the town of lot No. 12, and has since been lost by time or accident; but, on the other hand, some facts appear of a con-

Atherton
*vs.*
Johnson.

tradictory character, and, on a new trial, it will be the province of the jury to weigh them as they bear upon this point.

In respect to the second point, the length and character of the possession by *Wm. Stark*, by his widow, and by his heirs, must all be determined before we can decide, whether any title was acquired under it.

Thus, if the possession and entry of *Wm. Stark* were not adverse, but by the consent of the town till the executory agreement should be executed, it amounted to a mere nullity, and neither the state, his widow, nor his heirs, could profit by it.  2 *D. & E.* 53.—*Justin. Inst. b.* 2, *t.* 6, *s.* 2.—3 *John. Cases* 119.—13 *Mass. Rep.* 243, *and authorities passim.*

Thus, too, if the possession, after his flight and death, were not adverse, the same result would follow.  Whether, during either period, it were or were not adverse, is a question of fact.(1)

(1) 9 John.
102.—13 John,
495.—14 Mass.
Rep. 53.

If the possession after his death were adverse, it must then be determined by the jury, whether it were continued by the widow in her own right, or in behalf of her children, or as a joint disseisor with them.  Under the circumstances preceding the death of *Stark*, a strong presumption would arise, that she continued the possession as guardian in socage to their minor children.  1 *John. Rep.* 163.—5 *John. Rep.* 66.—7 *John.* 157.—1 *John. Cases* 219.—3 *Wils.* 516.

But many circumstances appear in this case to rebut that presumption, and being in our opinion competent, they must be submitted to a jury.

If the confiscation act should be found hereafter to affect the title of either party, as is anticipated by counsel, we would now apprize them, that it is by us considered a valid act.  It was passed before the formation of any of our constitutions, and was specially excepted from the operation of our present one.(2)  Similar acts, too, passed in other states during the great conflict for our independence, have uniformly been held valid.  1 *Day's Rep.* 4.—2 *John. Cases* 237.—4 *Mass. Rep.* 304, *M'Niel vs. Bright et al.*—15 *Mass. Rep.*

(2) 1 N. H.
Laws, 22.

44.—5 *Cranch* 353 *note.*—6 *Cranch* 286.—*Vattel, b.* 4, *ch.* 2, *s.* 21.

Should the jury find, that the town never parted with their paper title to the premises, and that the possession was in behalf of the heirs and adverse, a question of some nicety will arise as to the length of possession necessary to bar the title of a public corporation. *Bac. Ab.* " *Prerogative.*"—*Co. Litt.* 41, 6, 57, 118. *a.*—10 *Coke* 112.—10 *Mass. Rep.* 71, *Arundel vs. M'Culloch.**

As the tenant, also, is now in possession, virtually claiming under the town, as well as the widow, a question may arise, whether, having the paper title and present possession, he can be disturbed by one, whose title depends wholly on a bar occasioned by the statute of limitations. *Runnington Ej.* 58, 900.—*Cowp.* 216.—*Salk.* 421, *Stokes vs. Berry.*—5 *Cranch* 358.—13 *John.* 229.

The statute of limitations generally avails only as a defence. Where a demandant has recovered upon evidence of possession alone, it has generally been in cases where his possession was earlier than that of the tenant, and where the tenant did not show a perfect paper title in himself. *Ld. Ray.* 741.—*Salk.* 421.—1 *Mod.* 287.—2 *Saund.* 112, *Allen vs. Rivington.*—2 *John.* 22, 24.—4 *John.* 202, 211, 313.—3 *John.* 388.—6 *John.* 218.—10 *John.* 335, 355.—3 *Wheaton* 224, *note.*—4 *Taunt.* 547.—16 *John.* 314.

On the contrary, a possession may have been so long, and under such circumstances, as to warrant a jury in presuming an actual conveyance from him, who otherwise appears to have the paper title ; and when that presumption can reasonably be made in favor of a demandant, there seems to be no well founded objection to a recovery by him against a tenant, who has recently ousted him, and who formerly may have had the paper title. 6 *D. & E.* 554, *The King vs. the inhab. of Betterfield.*—*Strange* 609.—*Burr. Sett. Cases* 450, *Cold Ashton vs. Wood Chester.*—10 *John. Rep.* 377.—3 *John. Ca.* 109.—*Cowp.* 100, *Mayor of Hull vs. Horner ;*—214, *Eldridge vs. Knott.*—12 *Coke* 5, *Bedle vs.*

* 18 John. Rep. 227.

*Beard.*—3 *Maul. & Selw.* 24.—14 *Mass. Rep.* 55.—12 *ditto* 225.

On these last questions, we would not be understood to offer any opinion; but as some of them may arise on another trial, we merely invite the attention of the counsel to their consideration.

*Verdict set aside, and new trial.*