## Case No. 1,660.

### BORLAND v. DEAN.

[4 Mason, 174.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1826.

CONFISCATION—ACT MASS. APRIL 3, 1779.

Where the estate of a tenant in fee tail male was confiscated to the commonwealth, under the statute of Massachusetts of 3d April, 1779, providing for the confiscation of the estates of absentees, *held*, that the estate of the remainder-man was not thereby divested, but that the commonwealth took only, by virtue of the confiscation, such an estate as the absentee had in the premises; also *held*, that the tenant in possession of the premises, under a defective title from the commonwealth after the termination of their estate, was entitled to the value of his improvements.

[Cited in U. S. v. Athens Armory, Case No. 14,473.]

At law. This was a writ of formedon in remainder. There were several pleas in the case: 1. The general issue, ne done pas: 2. A special plea, setting forth, in substance, that the estate had been confiscated by a judgment at law, under the revolutionary confiscation acts of Massachusetts, as the estate of the prior tenant in tail, John Lindall Borland. There was a demurrer to this plea and a joinder in demurrer. There was also a claim for improvements, under the act of Massachusetts of 1807, c. 75.

At the trial under the general issue, it appeared that Timothy Lindall, the ancestor of the demandant, by his will on the 7th of July, 1760, devised the demanded premises to John Borland, the grandson of the said Timothy, for the natural life of the said John Borland, and after his death remainder to John Lindall Borland and the heirs male of his body issuing; and if the said John Lindall Borland should die without heirs male

---

[1] [Reported by William P. Mason, Esq.]

of his body issuing, then to Francis Borland, the brother of the said John Lindall Borland, and the heirs male of his body issuing. Timothy Lindall died seised. John Borland entered into possession, and died seised of his life estate; and after his death John L. Borland entered into possession, and was seised of the demanded premises, until the same were confiscated by a judgment against him under the confiscation act of Massachusetts, at September term of the C. C. P. for Bristol county, A. D. 1780, and a writ of seisin in favor of the commonwealth was executed thereon. John L. Borland died without issue in 1825. Francis Borland died in November, 1824, leaving the demandant [Joseph S. Borland], his eldest son and heir male. At the trial some question was made, whether the heirship, as stated in the writ, was necessary to be proved by the demandant. The court strongly inclined to think, that it was not necessary under the general issue; but should have been put in issue by a special plea; that ne done pas put in issue only the fact of the gift, as stated in the declaration, and not the heirship of the demandant. But the demandant being prepared with evidence to prove his pedigree, and having actually proved it, the point was not further moved. The tenant [Levi Dean] claimed under a deed of the premises by the commonwealth, granting the fee simple thereof, with warranty; and Shaw and D. Davis, for the tenant, insisted on his right to the claim for improvement made thereon, under the act of 1807, c. 78, if the title was not good in fee simple.

Webster and Prescott, for the demandant, denied that it was a case within the intent of the statute. Here the tenant did not "hold by virtue of a possession and improvement," but was in under a title, good for the life of John Lindall Borland, and that title was extinguished only by lapse of time and his death without issue. It was therefore a case of possession and improvements under title, not a defective title, but a good title, though defensible in the events which have occurred. The statute never intended to apply to such a case. They cited Knox v. Hook, 12 Mass. 329; Newhall v. Saddler, 17 Mass. 350.

Shaw and Davis contended, e contra, that here the tenant held under a title in fee simple from the commonwealth. If the demandant is right in his view of the case, the title of the tenant is a defective title; and it matters not, whether the defect extends to the whole title, or to a part of it, to the whole time or estate, or to a part only. Each case is equally within the reach of the statute; and so have been the adjudications. Bacon v. Callender, 6 Mass. 303, is in point.

STORY, Circuit Justice. If this question were entirely new and unaffected by authority, I own that I should think there was much reason to go the whole length of the argument of the demandant's counsel. The statute of 1807, c. 75, may be considered a remedial statute; but it is one, which goes in direct derogation of rights well established at the common law. The statute does not purport to adjust rights founded upon mere equities. It makes no discrimination between an innocent possessor or purchaser, and a trespasser knowing his own want of title, and acting openly in defiance of the rights of the legal owner. It being then a statute in subversion of legal rights, protected by the common law, it is certainly the duty of courts of law not to enlarge its operation beyond the fair and legal interpretation of its terms. There is no ground for construing it by an enlarged and liberal equity. Indeed, the class of cases, for which this section of the act was originally introduced, is well known to the profession at large, and especially to those who, like myself, were in the legislature at the time of its passage. But independently of any recollection of this sort, there is much apparent ground for arguing, that the true reading of the statute is, that the tenant, entitled to the value of his improvements, must be one, who has no title but by a possession and improvement. The words are, "that where any action has been, or may hereafter be commenced against any person for the recovery of any lands and tenements, which such person now holds by virtue of a possession and improvement, and which the tenant, or person under whom he claims, has had in actual possession for the term of six years or more," &c. Now, the argument is, that a person, who holds under a title, cannot be accurately said to be in by virtue of a possession and improvement, whether that title be defective or not. And a fortiori he cannot be said to hold by a possession and improvement, when he holds under a title good for life, or for any larger estate short of a fee simple. That there are cases quite as much entitled, as cases of this sort, to legislative protection, and cases indeed of greater hardship, as where an innocent purchaser is in under a defective title, and makes improvements, is (it is said) no ground for extending the meaning of the statute. The exposition must be, not of what the legislature ought to have done, but of what they have done.

But my opinion is, that this question was completely decided by the state court in Bacon v. Callender, 6 Mass. 303, soon after the enactment of the statute. The court there said, that "the statute, in its true construction, must, in our opinion, extend to all cases, where the tenant, or those under whom he claims, has been in possession six years or more before the commencement of the suit, by any title whatever, if the demandant has a better title." These words appear to me to express the opinion of the court, that wherever the tenant is in by a

title, which turns out to be defective, so far as respects the demandants, he is entitled to the value of his improvements. They were used in a case where the tenant claimed a title by deed, which, as to a moiety, turned out defective. It can make no difference, in my judgment, whether the defect be in the quantity of the land, or in the quantity or the quality of the estate conveyed. Pro tanto the title is defective. Deeming this the settled law of Massachusetts, I feel myself entirely bound by it. It is not fit here to attempt to introduce any rule of construing local statutes, which has been denied by the solemn adjudications of the state tribunals; and especially by a court of such great ability and learning as the supreme court of Massachusetts. And there is very strong reason to believe, that this construction has, in practice, been found wholesome and productive of public good. I shall admit the evidence.

Upon this decision, the counsel for the demandant proposed to take an exception to the opinion of the court, for the purpose of revising it; and by consent of the parties the cause was taken from the jury, with a view to a future trial upon the value of the improvements, if the point should be ultimately settled in favour of the tenant. The cause then came on to be argued upon the merits of the special plea, and was argued by Webster and Prescott for the demandants, and by L. Shaw and D. Davis for the tenants, at great length. For the demandants were cited 1 Hale, P. C. 240; 3 Inst. 19; Stamf. Pl. C. 187; Plowd. 354; Co. Litt. 130; 3 Bac. Abr. "Forfeiture," C; 13 Vin. Abr. "Forfeiture," C, p. 439; 2 Bl. Comm. 286; 3 Coke, 10, 14; Fost. Cr. Law, 95, 102; 4 Com. Dig. "Forfeiture," B; Jenk. Cent. pp. 250, 286, pl. 21; 2 Ander. 139; 2 Johns. 263; 8 Johns. 521; Latch. 24; 2 Lev. 170; Shepp. Touch. 224. For the tenant were cited 1 Mass. 347; 4 Mass. 304; 15 Mass. 44; 2 Bl. Comm. 167, 168, 248; 2 Mass. St. 1800, Append. 1055.

STORY, Circuit Justice. The question presented by this special plea depends upon the exposition of the act of the legislature of Massachusetts, of 30th of April, 1779, entitled "an act for confiscating the estates of certain persons, commonly called absentees." The general scope and object of that act are sufficiently commented on and explained in Martin v. Com., in 1 Mass. 347. The act declares, that each absentee, within the purview of it, "shall be held, taken, deemed, and adjudged to have freely renounced all civil and political relation to each and every of the said United States, and be considered as an alien." It then proceeds to declare, "that all the goods and chattels, rights and credits, lands, tenements, hereditaments of every kind, of which any of the persons hereinbefore described were seised or pos-

sessed, or were entitled to possess, hold, enjoy, or demand, in their own right, or which any other person stood or doth stand seised or possessed of, or are or were entitled to have or demand to or for their use, benefit, or behoof, shall escheat, enure, and accrue, to the sole use and benefit of the government and people of this state, and are accordingly hereby declared so to escheat, enure, and accrue." It then proceeds to point out the process, by which a judgment, in the nature of an office of entitling and instruction, may be obtained against the absentee's estate. The proper proceedings were in this case had, according to the act, against John Lindall Borland, as an absentee seised and possessed of the demanded premises, and in September, 1780, a judgment was recovered for the same in favor of the commonwealth, upon which a writ of habere facias possessionem issued, and was duly executed. In point of fact, John Lindall Borland was, at the time of this judgment, seised of the premises as tenant in tail male.

It is not disputed, that, by the act, the estate of J. L. Borland was legally vested in the court under this proceeding and judgment. It is however argued, that the estate was so vested only for the life of J. L. Borland, and that upon his death, if he had left issue male, the latter would have taken the estate per formam doni. And many authorities have been cited to prove, that under words equally general with the words of the act of 1779, where confiscation and forfeitures have been by statute inflicted in England, a like construction has been adopted. If the case turned upon this point, it would be the duty of the court to give to these authorities a very close examination, and to the argument itself, which is cogent and striking, a very deliberate consideration. But as J. L. Borland died without any issue male, it is wholly immaterial in this case, whether the estate passed for the life of J. L. Borland, or during the existence of the estate tail. The real point of inquiry here is, whether the confiscation of the estate of J. L. Borland was a destruction of the remainder in Francis Borland in fee tail male. It is said to have this effect, because the destruction of the prior estate tail destroys the estate in contingency in remainder; and because, as a power existed in the tenant in tail to bar the remainder, therefore the judgment of confiscation shall be considered as an equivalent, and as a due execution of the power by the commonwealth. It appears to me very clear, that neither proposition can be maintained in point of law; and that there is no principle, by which the demandant's right of recovery is shown to be barred. In the first place, the remainder of Francis was in no legal sense a contingent remainder. It was an absolute vested estate, to take place upon the regular determination of the prior estate tail in J. L. Borland. It was no more a contingent es-

tate, than an estate for life in A, with a remainder to B in fee or fee tail. The time when the latter is to take effect in possession is uncertain; but the interest itself is not uncertain, or dependent upon any contingency; but is vested and absolute.

In the next place, the judgment against J. L. Borland was no extinguishment of his estate in the premises, but an appropriation of it to the use of the commonwealth. The act of 1779 did not intend to destroy the estates of absentees in lands, but to vest them, whatever they might be, by forfeiture or escheat in the commonwealth. The object was not to declare, that a life estate, or fee tail or fee simple of an absentee in the lands, should cease and be extinguished; but that he was no longer capable of holding the same; and, as in a case of alienage, the commonwealth had a right, in virtue of its sovereignty, to take the same to its own use. It would be most unjust and absurd to suppose, that the legislature meant to confiscate the estate of B for the offence or alienage of A; to take one man's property for another man's offence or act. Unless the terms of an act were positive, direct, and absolute, no such construction ought, out of a decent respect for the legislature, to be adopted by any court of law. There is no pretence for such a construction of the present act. Francis Borland has had no judgment against him, as an absentee, within the purview of the statute; and it cannot be presumed, that the legislature meant to subject his estate to confiscation. The notion, indeed, that the escheat or confiscation of an estate tail destroys a subsequent remainder, is entirely at war with the adjudged cases. The very point occurred in the case of a forfeiture for high treason in the rebellion of 1745. In the case of John Gordon, in the house of lords, reported by that accurate and admirable judge, Sir Michael Foster (Fost. Cr. Law, 95), it was expressly decided that, a forfeiture of the estate by a tenant in tail, for high treason, did not destroy a subsequent remainder in tail; but the estate was appropriated to the crown only during the existence of the prior tenancy in tail. This, it should be remembered, was the case of an attainder for high treason, which is far stronger, than a case like the present, of escheat for alienage. It has never been supposed, that the escheat of an alien's estate for life, or in tail, carried with it the extinction of all subsequent vested estates of remainder-men, who were citizens. The law, as stated by Sir Michael Foster, was not new; but stands confirmed by the century cases of Jenkins. Jenk. Cent. p. 250, case 41; Id. p. 286, case 21. See, also, Brook, Abr. Nosme. 1; 13 Vin. Abr. "Forfeiture," C, p. 439; Dalrymple, Feuds, p. 188, c. 4.

As to the other point, it is very difficult to rest it on any legal foundation. The right of a tenant in tail to suffer a common recovery is certainly not equivalent to the actual exercise of this right. While it remains unexercised, the estate tail continues; and a fee simple can be acquired only by the docking of the entail by the common recovery actually suffered. If the existence of such a power had been sufficient, on an escheat or forfeiture for an attainder, to destroy the remainder, there would be an end of the remainder in all cases of attainder of the tenant in tail. Such a doctrine has never been established; and the cases in Jenkins are an authority the other way. So also is the case in Brook, Abr. Nosme. 1, which cites 37 Hen. VIII. The power of barring the entail was personal to the tenant in tail. It would not pass to the commonwealth under words as general as those in the act of 1779 (see Latch. 24; 2 Lev. 170; 13 Vin. Abr. 439; 3 Inst. 19;) and it was not, in fact, exercised by any one during the existence of the estate tail of J. L. Borland.

It is farther suggested, that by the judgment of confiscation the commonwealth, in fact, took a fee simple. But upon what legal ground can this position stand? The libel for confiscation did not itself, as it is set forth in the plea, state any particular estate of which J. L. Borland was seised and possessed. It stands perfectly equivocal on the face of the libel, whether it was a fee simple, a fee tail, or an estate for life. The judgment itself, therefore, does not purport to give a fee simple. And if it did, it is clear, that it could not rightfully pass any estate except what the absentee was seised and possessed of. Then, again, admitting, as the argument in the defence does admit, that the confiscation act proceeds to appropriate the estates of absentees not for offences, but for alienage, it is plain that, in ordinary cases of alienage, the commonwealth could take only such estate as the alien himself possessed, without disturbing any estate in other persons connected with it. Upon this analogy, there could be no reason for adopting an interpretation of the act beyond the appropriation of J. L. Borland's rightful estate. Indeed, the whole argument in the defence turns upon the other points already discussed, and this can be maintained only as a conclusion from them. So far from the judgment's being an extinguishment of the absentee's estate in the land, it rests upon the ground, that the commonwealth is the lawful haeres factus of it, and that it succeeds to the inheritance in the plight and extent, in which he held it. My judgment accordingly is, that the plea in bar is bad, and that the demurrer is well taken. Judgment accordingly.