### IN THE

# SUPERIOR COURT OF JUDICATURE.

#### FOR THE

## COUNTY OF SULLIVAN, OCTOBER TERM,

### A. D. 1831.

## JOSEPH C. THOMPSON *versus* JOHN CARR.

The confiscating act of November, 28, 1778, vested in the state all the property of the persons named in the act.

When an agent is authorized to convey land belonging to the state, he may convey by a deed in his own name.

Where lands have been conveyed by an agent, or under an authority given by law, and the title thus derived is set up against the former owner or his assigns, it must be shown that the authority was strictly pursued. But when the title is set up against a stranger, it is enough to show an authority to convey, and a conveyance made under it.

The trustees under the confiscating acts had no authority to convey lands without a licence from the judge of probate. Long acquiescence by the state in a sale made by such a trustee, affords a sufficient ground for a jury to presume a licence.

THIS was a writ of entry, in which the demandant counted upon his own seizin of the two hundred acre lot of land, No. 2, in the northeast division of two hundred acre lots, in Springfield, in this county, and upon a disseizin by the tenant. The teste of the writ was the 29th March, 1828. As to the easterly half of the de-

manded premises, there was a disclaimer, and as to the other half, a plea of *nul disseizin*, and a claim for the increased value, in consequence of improvements made by the tenant, and those under whom he claimed.

The cause was submitted to the decision of the court, upon the following facts.

On the 28th November, 1778, John Wentworth was lawfully seized in fee of the demanded premises. By a statute passed on the said 28th November, 1778, it was enacted, " that the whole estate, real and personal, of the said John Wentworth—lying and being within this state, be, and hereby is, declared to be forfeited to this state, and that the same be for the use thereof."

On the 24th February, 1780, Samuel Gilman was duly appointed by the judge of probate for the county of Rockingham, trustee of the estate of the said John Wentworth, and on the 22d April, 1782, conveyed the demanded premises to John Taylor Gilman, by a deed as follows : " Know all men by these presents, that I, Samuel Gilman, being duly appointed by the judge of probate for the county of Rockingham, trustee to the confiscated estate of the late governor, John Wentworth—for and in consideration of the sum of eighty two pounds ten shillings—have given, granted, bargained, sold, and by these presents, in my said capacity, and by virtue of the laws of this state, in this case made and provided, do fully, freely, and absolutely, give, grant, bargain, sell, convey, and confirm to him, the said John Taylor Gilman, and his heirs—lot No. 2, in the northeast division of two hundred acre lots, in said town—the same being part of the estate of the aforesaid John Wentworth, confiscated by an act of this state—And I, the said Samuel Gilman, in behalf of said state of New Hampshire, by virtue of the laws and resolves of said state, in this case made and provided, do covenant with the said J. T. Gilman— that the state of New Hampshire, until the delivery hereof, is lawfully seized and possessed of the premises—

Witness my hand and seal, this 22d day of April, 1782.

SAMUEL GILMAN, *and seal.*

The demandant has whatever title John Taylor Gilman acquired by the said deed.

John Quimby and Abraham Philbrick, by deed, dated December 23, 1820, and acknowledged the 27th March, 1823, conveyed the demanded premises to Samuel Robie. But it is not known that Robie ever entered the said premises, or at what time the said deed was delivered to him.

Samuel Roby died intestate and the administrator of his estate by a licence from the judge of probate, conveyed the demanded premises to the tenant, by a deed dated July 24, 1824. And thereupon the tenant entered, and has been in possession ever since.

*Sullivan, Atty. Gen.* for the tenant.

The demandant has shown no title to the land. Nothing passed by the deed of Samuel Gilman. The trustee of a confiscated estate had no power to sell without a license from the judge of probate. Like an executor or administrator he had no authority to sell until duly licensed. The statute of June, 1779, gives him no power to sell. It made it the duty of the trustees to make inventories of the real and personal estate, and authorized them to take possession. Indeed it may be conceded that it gave them all the powers and authorities which the law gives to executors and administrators. But there is nothing in the statute from which a power to sell land, can be derived even by implication.

On the other hand the statute expressly provides that the judge of probate shall make such orders from time to time as may be most effectual for carrying the confiscating act into execution. If the trustee had a general authority to sell, what occasion was there for an order from the judge of probate?

The trustee had no power to sell without license, and as it does not appear in this case that he had a license, nothing passed by the deed.

Thompson.
*v.*
Carr.

There is another objection to that conveyance. The deed is in the name of the trustee, whereas it ought to have been made in the name of the state. It is well settled, that where an agent conveys land, he must do it by a deed in the name of the principal, otherwise nothing will pass.

There is still another exception to that conveyance. The statute provided, that the sale should be at public vendue. It is not stated in the deed, nor is there any thing in this case, which shows that the sale was by public auction. It does not appear, then, that the trustee pursued his authority to sell, if he had it, and for this cause nothing passed by his deed.

*J. Parker*, for the demandant, observed that there was a provision in the case agreed, that either party should be at liberty to add further facts to the statement, if they should be deemed important to a final decision, and that a copy of the licence from the judge of probate, authorizing the trustee to sell, had been procured, which the demandant proposed to make a part of the case if necessary.

But he contended that such evidence was not essential to sustain the action. By the act of the 25th June, 1779, the judge of probate had power to make such orders from time to time, concerning the disposal of such forfeited estates, as might be most effectual for carrying into effect the act of Nov. 28, 1778, and for bringing the net produce of said estates into the treasury of the state; but this power related to administration in the insolvent course—to examinations respecting embezzlement—to the allowance to wives and children, and to the trustees, and to the settlement, and adjustment of the accounts, for the purpose of ascertaining the net produce. It did not make a licence necessary, and from the whole tenor of both acts, no licence was necessary. The trustees had power to sell from the very nature and objects of their appointment, as they were constituted trustees

for the purpose of bringing the net proceeds of the estate into the treasury, which could only be done by a sale, and the act contained an express provision that all sales by virtue of the act, should be at public vendue.

The act, then, authorizes a sale, for the authority could be executed only by a sale, and a mode was provided in which the sale should be made. A licence from the judge would confer on the trustee no greater power than he had without it.

The case, therefore, was not, in this respect, like that of executors and administrators, where by the express terms of the statute, a licence is made necessary to authorize a sale.

The argument that such a power would interfere with the powers of the judge, could not avail, for the judge held the bond of the trustee and could oblige him to account for the proceeds of the sales.

If, however, a licence was necessary, he contended that it might be presumed, after such a lapse of time, that one had issued—that the sale was at public vendue, and that all the other requisitions of the statute had been complied with, and most especially against the tenant, who was a mere intruder, or had entered under an intruder, and who made no attempt to connect himself with the title of Wentworth or the state. 7 Mass. Rep. 472, *Knox* v. *Jinks*; 14 ditto, 147, *Pejepscut Proprietors* v. *Ransom*; 1 Greenl. 17, *Farrer* v. *Merrick*; 2 N. H. Rep. 313; 19 Johns. 346.

The deed of the trustee purported to convey in pursuance of the laws and resolves of the state, and after a lapse of fifty years, it might well be presumed that he complied with their requisitions, and no person, except one claiming under Wentworth, or the state, had a right to dispute the due execution of the authority.

In relation to the form of the conveyance, he argued that the case was analogous to that of executors, administrators and guardians, and the deed in the proper form.

The opinion of the court was delivered by

RICHARDSON, C. J.	When the statute of November 28, 1778, entitled " an act to confiscate the estates of sundry persons therein named," was passed, this country was at war with Great Britain ; and it is recited in the preamble of the act, that John Wentworth and others, had, after the commencement of hostilities, gone over to the enemy, and to the utmost of their power, aided, abetted, and assisted the enemy. The right to confiscate the property of an enemy, during a war, is derived from a state of war. The right originates in the principle of self preservation, and is in substance the same as the right of capture. There is no doubt that the said statute vested in the state all the property of John Wentworth. 6 Cranch, 286, *Smith* v. *Maryland* ; 3 Dallas, 199, *Ware* v. *Hylton* ; 2 N. H. Rep. 34 ; 3 D. & E. 726 ; 1 H. Bl. 123 ; 2 Dallas, 402 and 415 ; 4 ditto, 14 ; 4 Cranch, 415 ; 1 Mass. Rep. 347 ; 4 Mason, 174.

Was the deed, in this case, sufficient in law to pass the title of the state ?

The general rule is, that when a deed is made by an agent, it must be in the name of the principal.	4 N. H. Rep. 102.

But when an individual is authorized by law to convey the estate of another, without authority from the owner, the deed must be in his own name.	Thus, when collectors of taxes sell lands for taxes, the conveyance is in their own name.	The form of the deed is so prescribed by statute.	1 N. H. Laws, 567.

When a sheriff sells a right in equity to redeem lands mortgaged, the conveyance, according to the form prescribed by the statute, must be in his own name.	1 N. H. Laws, 106.

Executors, administrators and guardians, when authorized by the judge of probate to convey real estate, always make the deed in their own names.	3 N. H. Rep. 30.

And it is not doubted that when the legislature has given authority to agents to sell and convey lands belonging to the state, the deeds have been usually made in the names of the agents, and that such conveyances are in law sufficient. 6 Pick. 414.

And we are of opinion that the deed in this case is in due form to pass the title.

But another question arises in this case. The statute of June 25, 1779, provided that trustees of the estates confiscated should be appointed by the judges of probate; that the trustees should give bond to the judge of probate for the faithful performance of their respective trusts, and that the judges of probate should make such orders, from time to time, concerning the disposal of such forfeited estates, as might be most effectual to bring the net produce of said estates into the treasury as soon as might be. Nothing is said in the act of a license by the judge of probate to sell, nor is a power to sell given to the trustees in express terms. But the trustees did proceed to sell. This appears from the preamble of an act passed on the 1st March, 1783, in which it is recited " that the said trustees have, at various times, paid into the public treasury divers sums of the late paper currency raised by the sales of said estates." And there is a provision in the act of 1779, in these words, " all sales by virtue of this act shall be at public vendue." The confiscation act appointed a committee in each county " to enter into and take possession " of all the confiscated estates; and we have no doubt that the trustees, appointed under the act of 1779, were intended to be trustees to sell. A licence may, however, have been necessary. But it does not appear that the sale in this case was at public vendue, and the question is, whether it is essential to the validity of the demandant's title that this should be shown ?

When a party derives his title through a conveyance, made by a person claiming to act by authority, given either by the law, or by the owner of the land, there is a distinction to be observed between the cases where such

title is set up against the owner of the land thus convey-
ed, or those claiming under him, and the cases where it is
set up against a mere stranger. When the title is set up
against the owner or his asigns, it must be shown, that
the authority, whether given by law or by the owner,
was strictly pursued. But when the title is set up against
a stranger, it is enough to shew an authority to convey
and a conveyance made under it.

Thus, where a guardian has sold the land of his ward
under a licence from the judge of probate, when the title
derived through the guardian's sale is set up against a
stranger to the ward's title, it is enough to shew the li-
cence of the judge of probate and a deed made under it.
But when the title is set up against the ward or his heirs,
it must be shown that the sale was made in pursuance of
the provisions of the statute, which authorizes a sale in
such cases.

The law is the same with respect to sales made by ex-
ecutors and administrators.

So where a sale of land has been made by a collector
of taxes, against one who shows no title, and who was
not in possession when the land was sold, it is enough to
show the collector's warrant and deed.

In all these cases it is absurd to compel a party to show
the regularity of all the proceedings when contending
with another, whose rights were in no way affected by
the proceedings.

This distinction is recognized in the case of *Knox* v.
*Jenks,* 7 Mass. Rep. 488, and seems to us to be founded
on sound reason and good sense, and we have no hesita-
tion in adopting it.

In this case, it does not appear that the rights of this
tenant, or of any person under whom he claims,
were in any way affected by the sale made by the trus-
tee, under the act of 1779, and we think, that as against
him, it was not necessary to show that the sale was at
public vendue.

But it is objected that a licence from the judge of probate was not produced in this case, so that it does not appear that the trustee had authority to sell. It is true that there is in the case no direct evidence of a licence. But the sale was made nearly fifty years since, and neither the state, nor any person claiming under the state, appears at any time since the sale, to have made any objection to the proceedings, or to have made any claim to the land. And we are of opinion, that an acquiescence in the sale, on the part of the state, for so long a period affords a very reasonable ground to presume, as against one who shows no title derived from the state, that the sale was made by virtue of a lawful authority. But although a jury might well enough proceed upon such a presumption, and find that there was a licence, we are not at liberty to presume there was a licence, and make that presumption the foundation of our decision. This question must be settled by a jury. We think that the demandant cannot have judgment, until it shall appear in some way, that there was a licence.