## MARSTON *vs.* BRACKETT.

Unless it is otherwise ordered, parties and counsel may be present at the examination of witnesses, before a commissioner, in chancery; and they may, through the commissioner, put interrogatories in writing, for the purpose of obtaining all the testimony the witness is able to give upon the subjects embraced in the interrogatories filed in the cause; but they cannot be permitted to have any verbal communication with the witness or commissioner, or in any other way to interfere with the examination.

A grantor, who has made a voluntary mortgage and note, with a view of defrauding creditors, and who has subsequently conveyed the land to a bona fide purchaser, being released from the covenants in the latter deed, may be

a witness to show that before the making of that deed the note upon which the mortgage was predicated was given up to be cancelled, and that after he had executed the second deed the mortgagee induced him to give a new note, similar to the first, with a view of setting up the mortgage against the subsequent purchaser.

A defendant, in a bill in chancery, has a constitutional right to have matters of fact, alleged in the bill and denied by the answer, tried by a jury, if they are material to the decision of the cause, and the application is seasonably made.

If a party, after the evidence in chancery has been closed, has a trial by jury, the case is to be tried, before the jury, upon the evidence taken for the hearing in chancery, unless the court, upon cause shown, otherwise order. But the court may make an order permitting farther evidence to be introduced, and may order the parties to be examined, if the case appears to require it.

A mortgagee who has knowledge of a subsequent purchase, and has stood by and seen the purchaser making repairs and improvements, without speaking of his mortgage or making objections, is not thereby to be precluded from setting up his mortgage against such purchaser, if it was on record at the time, and there is nothing disclosed to show that the mortgagee knew that the purchaser was in fact ignorant of the mortgage, and was guilty of a fraudulent concealment.

A bill in equity, to set aside a fraudulent mortgage, may be sustained, notwithstanding the plaintiff is in possession, and might maintain that possession, against the fraudulent mortgage, in a suit at law.

Where the owner of land made a note without consideration, and a mortgage to secure it, with the purpose of defeating creditors, which was recorded; subsequent to which the fraudulent mortgagee delivered up the note to be cancelled and the mortgagor then conveyed the land to a bona fide purchaser; and the mortgagee afterwards procured a new note, similar to the first, and attempted to set up the mortgage as a valid incumbrance—*held*, that the purchaser was entitled to a release of the pretended title under the mortgage. Such a case is not within the principle that a bona fide purchaser, without notice, is not entitled to maintain a bill for relief, although he may have a good defence in equity. There is no ground for pretence that the equities of the parties, on such a state of facts, are equal; nor for the application of the principle that a subsequent purchaser with notice is not entitled to dispute a prior conveyance.

In Chancery—for relief against a fraudulent mortgage. The allegations in the bill were, that one John P. Marston conveyed the premises to the plaintiff, Samuel P. Marston, October 13, 1829, for which the plaintiff then paid $400, and that the remainder of the purchase money, being $500, was not then paid, on account of a claim made on the premises by one Thomas Marston—that the plaintiff, having been

absent in the West-Indies from October, 1829, to July, 1834, on the 9th of September, 1834, adjusted said claim, and paid Thomas Marston $600, being the principal and interest of his claim—that on the 15th of October, 1834, he appointed the defendant his attorney, to take care of his property and business generally, and the letter of attorney remained in force until the first of September, 1836—that John P. Marston brought a suit against the plaintiff, returnable January term, 1835, for the recovery of the balance of the purchase money, and that the defendant, as agent of the plaintiff, effected a settlement by which the suit was dismissed, and the wife of the said John P. released her right of dower to the plaintiff, upon which the defendant, as agent of the plaintiff, paid said John P. $300, and charged the same in account, which was afterwards paid by the plaintiff.

The bill then set forth that the defendant had now in his possession a mortgage of the premises, from John P. Marston to himself, dated Sept. 15, 1827, duly acknowledged and recorded, and made ostensibly to secure a promissory note —that at the time of making the same, said John P. was not indebted to the defendant, but the note and mortgage were made to cover the property from creditors—that the plaintiff, when he purchased, was ignorant of the existence of this mortgage, and did not learn its existence until after his return, in the summer of 1834—that the defendant well knew when the plaintiff made his purchase, but did not inform him of the existence of the mortgage, or make any claim on the premises, and that the plaintiff did not know that he intended to make any claim, until October 1st, 1836 —that in fact about three weeks after the execution of the mortgage to the defendant, the wife of said John P. Marston, at his request, sent to the defendant for the note, which was sent by him to her, and she kept it in her possession until September, 1836, when, with the consent of her husband, she re-delivered it to the defendant—that in the February previous, this note being then at Charlestown,

in Massachusetts, John P. Marston, at the request and solicitation of the defendant, gave him a new note, similar to it, so that the defendant might have a claim to support his mortgage—that the defendant then agreed to hold the note and mortgage, and enforce them against the plaintiff, for the benefit of said John P. Marston—and that the defendant was attempting to set up the mortgage against the plaintiff, contrary to his request, and had published a notice that he had taken possession of the premises, and held the same for the purpose of foreclosure.

The defendant, in his answer, admitted the conveyance from John P. Marston to the plaintiff, (subject, however, as he alleged, to the mortgage to himself ) and that he was, on the 15th of October, 1834, appointed attorney to transact all business for the plaintiff, and so continued until about the first of September, 1836—that he compromised and adjusted the suit of John P. Marston against the plaintiff, as set forth in the bill—but alleged that it was without any reference to the mortgage to the defendant, and without intending to impair his claim. He admitted that he had in his possession the mortgage mentioned in the bill, and alleged that it was given upon a full and adequate consideration, as security for a just and legal debt for sums of money advanced by him at different times to said John P. Marston ; (the precise sums, or the dates when advanced, he could not state,) and not for the purpose of covering up the property of John P. Marston from his creditors—and that its existence, as he believed, was known to the plaintiff before his purchase in October, 1829. He further alleged, that the plaintiff, on or before the 9th of October, 1834, and before the defendant was appointed attorney, had knowledge of the existence of the defendant's mortgage, and that he intended to avail himself of it as a security for his debt—that the note given him by said John had always remained in his possession, and was never under the control of said John or his wife. And he admitted that he was attempting to fore-

close the mortgage, but alleged that it was for his own benefit, and not for the use and benefit of said John, or any other person than himself.

The plaintiff filed a general replication, and evidence was taken under a commission.

*C. B. Goodrich*, for the defendant, moved to suppress all the testimony taken on the part of the plaintiff, because the counsel for the plaintiff, and the plaintiff himself, were present when the witnesses were examined; which was admitted, but they did not interfere with the examination. He contended that the statute required that the proceedings should be according to the rules established in chancery, and cited *Gresley's Eq. Ev.* 53, 82, 150. The court denied the motion, for the reasons stated in the opinion which follows.

He further moved to suppress the testimony of John P. Marston and wife, which had been taken in the cause, on the ground that he was an incompetent witness to prove a deed made by himself, fraudulent; (4 *Mass.* 707, *Bartlett* vs. *Delprat;* 12 *Mass.* 440, *Clark* vs. *Waite;*) and also because he was the maker of a negotiable instrument, to which he had given credit by his signature, and could not by his own testimony prove it originally fraudulent. 1 *N. H. Rep.* 60, *Houghton* vs. *Page.* And he argued that it was no answer, to say that the witness was introduced to prove that a note had been substituted for the one originally given. It was equally to show fraud in himself. It was to prove that a note was given at a different time from what it purported to be, and for a fraudulent purpose.

The court denied the motion.

The counsel for the defendant then moved for a trial by jury, and relied upon the following clause in the constitution of the state, to wit.—" In all controversies concerning property, and in all suits between two or more persons, except

in cases in which it has been heretofore otherwise used and practiced, the parties have a right to a trial by jury; and this method of proceedure shall be held sacred, unless in cases arising on the high seas, and such as relate to mariners wages, the legislature shall think it necessary hereafter to alter it." In support of the motion, he cited 7 *Pick.* 369, *Charles River Bridge* vs. *Warren Bridge.*

The court granted the motion, and ordered issues to be formed under the direction of the court upon such matters of fact as were in controversy between the parties, and limited the evidence to be used on the trial of the issues to that taken to be used in the cause.

The defendant's counsel subsequently withdrew this motion, and proceeded to a hearing upon the bill, answer and evidence.

He contended, 1, that the bill ought not to be sustained, because the plaintiff had a plain, adequate, and complete remedy at law, and is not entitled to the summary and extraordinary relief sought in his bill. 2 *Story's Eq.* 139; 3 *Brown's C. C.* 15, *Ryan* vs. *Macmeath;* 2 *Bro. Parl. Cas.* 39, *Welby* vs. *The Duke of Portland;* 10 *Price* 31, *Duncan* vs. *Worral.*

2. Admitting that the plaintiff is a *bona fide* purchaser, for a valuable consideration, without notice, it is no ground for relief, though it is a good defence in equity. 18 *Johns. Rep.* 544, *Beekman* vs. *Frost; Ambler* 192, *Patterson* vs. *Slaughter;* 2 *Atkyns* 483, *Lord Tenham* vs. *Herbert;* 1 *Vernon* 308, *Pawlet* vs. *Ingres;* 1 *Bro. C. C.* 572, *Weller* vs. *Smeaton;* 3 *Paige Ch. Rep.* 432.

3. The plaintiff is a subsequent purchaser with notice. The registry of the defendant's deed is notice; the plaintiff's attorney, who negotiated the plaintiff's title, had actual notice at the time of the purchase. The plaintiff had notice himself before the payment of the purchase money, except to a very small extent, and is not entitled to dispute the title of the defendant. 1 *Sumner's Rep.* 506, *Wood* vs.

*Mann;* 2 *ditto* 547, *Flagg* vs. *Mann;* 1 *Johns. Ch. Rep.* 300, *Frost* vs. *Beekman;* 2 *Johns. Rep.* 510, *Johnson* vs. *Stagg;* 1 *Story's Eq.* 392, 395, 396; 1 *Johns. Ch. Rep.* 566, *Murray* vs. *Ballou;* 2 *ditto* 155, *Murray* vs. *Finister;* 3 *ditto* 345, *Denning* vs. *Smith;* 7 *ditto* 65, *Jewett* vs. *Palmer;* 5 *Peters' U. S. Rep.* 280, *Cathcart* vs. *Robinson;* 1 *Hopkins' Ch. Rep.* 55, *Galatian* vs. *Erwin;* *Mit. Pl.* 275, *et seq.;* 1 *Atkyns'* 522, *Kelsall* vs. *Bennett;* 2 *Paige Ch. Rep.* 202, *Pendleton* vs. *Fay;* 2 *Atkyns'* 630, *Story* vs. *Lord Windsor.*

A man cannot set up his own illegal act, to avoid his own deed. 3 *Ves. Jr.* 913, *Watts* vs. *Brooks.* The reason of this decision is equally applicable to his grantee with knowledge of the illegal act. The plaintiff is not a *bona fide* purchaser. Having knowledge of the conveyance to the defendant, he bought with his eyes open, and cannot now complain if he loses his money. Some English decisions upon the statute 27 Eliz. ch. 4, may be found at variance with the position here taken. They have been mostly, however, since the revolution, and of course not to be cited here as authorities, and have been reprobated in this country. 2 *Mason's Rep.* 276, *Bean* vs. *Smith;* 1 *Johns. Ch. Rep.* 271, *Sterry* vs. *Arden.* In *Twyne's case,* the doctrine of which has been sanctioned by this court, it was held, that by the common law an estate made by fraud should be avoided only by him who had a former right, title, interest, debt or demand. The plaintiff in this case had no such former interest, and was not intended to be defrauded by the conveyance to the defendant; and it would seem, therefore, that he is not in a condition to take advantage of any fraud in the defendant's title.

4. John P. Marston and his wife were discredited by the fraud which they swear they have committed. The requisite proof, then, is wanting to authorize the court to hold the defendant's answer disproved by two credible witnesses, or, what is equivalent, one witness and strong circumstances coming from a credible source.

5. There is no pretence of want of fidelity in the defendant, as attorney of the plaintiff. He has done nothing in that character to compromit his rights. The plaintiff knew he intended to set up his mortgage, before he appointed him attorney, and he made repairs, &c., at the expense of the plaintiff while acting as his attorney, expecting that the plaintiff would redeem, as by law he might. And at the time of appointing the defendant his attorney he had paid only a small part of the purchase money, leaving enough in his hands to redeem the defendant's mortgage.

*Farrar*, on the same side.

*J. W. Emery,* (with whom was *Bartlett,*) for the plaintiff.

I. The first question, in this case, arises on the objection to the competency of the testimony of John P. Marston and his wife. It has been settled by this court, that a witness may be admitted to invalidate a title derived by and from himself. *5 N. H. Rep.* 181, *Hadduck* vs. *Wilmarth.* The plaintiff, previous to John P. Marston's giving his testimony, released him from all claims he had against him on account of his deed to him, and thereby removed all objection.

II. The defendant attempts to set up a mortgage deed against the plaintiff, obtained from John P. Marston, previous to the deed of the latter to the plaintiff.

1. The first objection the plaintiff makes to the mortgage deed, is, that it was voluntary, without consideration, and fraudulent; and therefore void as it regards the plaintiff, who is a subsequent purchaser, for a valuable consideration. 1. *Story's Eq.* 409 *to* 417 ; *Fonblanque's Eq.* 225, (*ed. of* 1831.)

2. That the agreement between the defendant and John P. Marston, made in the spring of 1836, by which the defendant obtained the new note, was a gross and palpable fraud on the plaintiff, for the defendant was then the agent of the plaintiff.

3. That the original note, on which the mortgage was based, from John P. Marston to the defendant, has been given up by him to Marston, and destroyed. The note was destroyed by the defendant, with the intention probably of suppressing it, so as to make the new note of J. P. Marston to him good, which is a fraud.

4. That at the time the defendant, as the agent of the plaintiff, settled with John P. Marston, and paid him the balance of the consideration money for his deed to the plaintiff, the defendant then said that it was part of the arrangement that the defendant's mortgage aforesaid should be given up, while at the same time he agreed with John P. Marston to hold on to the same for his benefit. This was a fraud on the plaintiff.

5. That the defendant knew of the deed of John P. Marston to the plaintiff at or about the time it was made, and did not disclose his title ; and the defendant did, while agent of the plaintiff, expend his money in repairing the premises, and also treated the property as the plaintiff's, and it is now a fraud in him to set up his mortgage. *5 Call's Rep.* 463, *Engle* vs. *Burns*, (23 *Amer. Jurist* 150); 6 *N. H. Rep.* 521, *Morse* vs. *Child ;* 3 *N. H. Rep.* 170, *Scoby* vs. *Blanchard ;* 5 *N. H. Rep.* 181, *Hadduck* vs. *Wilmarth ; Roscoe's Ev.* 25.

III. The mortgage deed of John P. Marston to the defendant being without consideration, and the defendant now attempting fraudulently to set up the same against the plaintiff, a court of equity has power to compel a delivery and cancellation of the deed. 1 *Story's Eq.* 418, 419 ; 1 *P. Wms. Rep.* 577, *Nalred* vs. *Gilham ;* 17 *Ves. Jr.* 111, *Hayward* vs. *Dimsdale; Mit. Pl.* 116 ; *Story's Eq.* 420, 410 ; *Fonblanque's Eq.* 61, (*ed. of* 1831); 1 *Day's Rep.* 107, *Bennet* vs. *Beardsley ;* 2 *Ves. R.* 200, *Newman* vs. *Payne ; ditto* 287, *Bates* vs. *Graves ;* 9 *Ves. R.* 292, *Hatch* vs. *Hatch ;* 13 *Ves.* 136, *Wright* vs. *Proud ;* 14 *Ves.* 273, *Haquenin* vs. *Baseley ;* 1 *Johns. Ch. Rep.* 517,

523, *Hamilton* vs. *Cummings* ; 2 *ditto* 512, *Lewiston* vs. *Hubbs* ; 1 *Maddox Ch.* 208, 209, &c.

Maddox and Story both arrange their observations on this subject under the head of fraud. 1 *Mad. Ch.* 208 ; 1 *Story's Eq.* 420 ; *Cooper's Pl.* 139.

The opinion of the court upon the several motions and questions raised in the case, was delivered by—

PARKER, C. J. The motion to suppress the testimony taken in this case cannot prevail. The statute, in enacting that the proceedings to be had, in pursuance of the provisions conferring chancery jurisdiction, should be in conformity with the usual practice of courts of chancery in like cases, did not intend to regulate a mere matter of practice, of the character of the one now in question, but to provide that the proceedings should be by bill and answer, decree, &c., and on the principles of decision adopted in chancery, so far as they were not repugnant to the laws of the state. The same statute confers upon this court the power to make all necessary rules for the conducting of the business in the same, &c. Had the statute intended to require us to follow all the rules of practice in courts of chancery, we should in many cases find it somewhat difficult to execute it, on account of the different rules prevailing upon some subjects in the courts of England, and those of this country.

Up to this time we have adopted no general rule upon the subject matter which forms the foundation of this motion. The practice in taking depositions to be used at law, is for the parties to be present, and put interrogatories *viva voce.* This is liable in some cases to abuse ; and it may be found expedient to regulate this matter hereafter by a rule. In one case in chancery, on motion and cause shown, a special order was entered that the parties should not be present at the taking of the testimony. Probably that may have been practised in other cases. There are undoubtedly instances in which such a course would prevent the party from avail-

ing himself fully of the testimony which the witness was able to give ; and until the matter is otherwise regulated we shall permit the parties and counsel to be present at the examination, and to put interrogatories in writing, through the commissioner, in aid of the interrogatories filed in the cause, for the purpose of drawing out whatever knowledge the witness may have on the subjects embraced in the interrogatories filed : but in no case to address the witness, or make any suggestion to him, or to the commissioner, or in any other way to interfere with the examination. If there are evils in permitting the parties to have a knowledge of the testimony before a formal publication, there are also evils incident to a contrary course ; and it may be well to ascertain the practical operation of the rule we now adopt. As no rule had been adopted when this testimony was taken, and no abuse is suggested, we see no reason for suppressing it.

The motion to suppress the testimony of John P. Marston and wife, is placed upon two grounds ; one that he is incompetent to prove a deed made by himself, fraudulent, and the other that he cannot be admitted to prove a negotiable note originally fraudulent, to which he has given credit by his signature.

If the objection to the testimony of John P. Marston were well founded on both grounds, he would be excluded, not on account of interest in the event of the suit, but from reasons of public policy, because the law would not permit him thus to defeat his own acts : and it might well be questioned whether the exclusion should extend to the wife, to whom the grantee or payee had in no way trusted, and who would not be giving testimony to invalidate any act of her own. A woman may be a witness between third persons in cases where she could not be so if her husband was a party. 1 *Strange* 504, *Williams* vs. *Johnson.* But it is unnecessary to settle that here, as we are of opinion that the testimony of John P. Marston may well be received in this case.

This case does not necessarily involve the question

whether a grantor, who has conveyed land by warrantee deed, can afterwards be permitted, in favor of a creditor who has levied upon the land, or of any other person claiming title against such conveyance, to give evidence that the deed was fraudulent; for the testimony in this case is not offered merely to prove the mortgage to the defendant to have been fraudulent at the time when it was made. That matter appears to be merely introductory to the further fact, that after it was so made, no consideration in truth existing for the note to the defendant, that note was given up to Marston's wife, at his request, and that at the time when the plaintiff took his conveyance the defendant had no debt, or evidence of any debt, in support of his mortgage: That it in fact stood at that time as a satisfied mortgage, although the satisfaction had not been entered of record. We see no objection whatever to the competency of this testimony. A party who had given a mortgage, and afterwards conveyed the land, if released from his covenants might well be a witness to show that prior to the latter conveyance, the debt upon which the mortgage was predicated had been paid and satisfied. Any objection to his testimony would only go to his credibility. And the further testimony that the defendant afterwards persuaded the witness to give him another note, is not incompetent within any rule that has been suggested. A witness may be heard to testify that he gave a party a note or other paper, in order that such party might make a fraudulent use of it; and if the fraudulent use to be made of it was to connect it with a previously satisfied mortgage, no rule of public policy seems to conflict with his stating that fact. It is no objection to the testimony of a witness that it goes to invalidate a title derived by deed from such witness. 5 *N. H. Rep.* 181, *Hadduck* vs. *Wilmarth.* The evidence in this case is not necessarily to defeat the deed by showing that it never had any legal existence, on account of fraud, but evidence to show that, having once become invalid, the party and witness combined together to attempt to make it available.

It has been said that a witness is not to be heard to allege his own turpitude ; but the common law does not recognize such a general rule in relation to witnesses.   3 *Johns. Cas.* 191.

Nor is John P. Marston incompetent, as against the defendant, to show that the note he gave the defendant was originally fraudulent.   There is no suit here upon the note itself ; and the defendant may, if he pleases, notwithstanding any decision to be made in this case, proceed for its recovery against the promiser.   But in an action upon a negotiable promissory note, a party to it may in many cases be a witness to defeat the note, if not a party on the record, or interested.   2 *N. H. Rep.* 212, *Bryant* vs. *Ritterbush ;* 5 *N. H. Rep.* 196, *Carleton* vs. *Whitcher.*

It has been said that a person who has put his name to a negotiable instrument cannot be a witness to show that it was originally void, even in a suit between the original parties to the instrument—that he cannot testify to facts which would render the note void even in the hands of a *bona fide* holder, for a valuable consideration, without notice, notwithstanding it has never passed into the hands of such holder. *Vide authorities cited* 1 *N. H. Rep.* 60, *Houghton* vs. *Page ;* 5 *Green.* 374, *Chandler* vs. *Norton.*   But we are all of opinion that this is not the true rule, and that if the exclusion is maintained in any case, it can only be so in a suit by an endorsee for value, without notice, and not in a case between the original parties to the note.   16 *Mass. Rep.* 121, *Fox* vs. *Whitney.*   There is no reason why a party to a negotiable note, so long as it remains in the hands of the original payee, should not be permitted to give evidence of any illegality in the consideration, as gaming or usury, as well as want of consideration.   There is no reason why a party who obtains a note by fraud, or upon an illegal consideration, should have greater protection than he who merely obtains it without any consideration.   If it be true that after a negotiable instrument has passed into the hands

of an innocent endorsee, a party who gave it currency by his signature should not be permitted to give evidence showing it originally void by reason of illegality, and thus defeating it to the prejudice of the innocent endorsee, it must also be true, if the evidence of a party to it is admissible in any case, that so long as the original payee holds it, the law should not exclude evidence to furnish him protection in his fraud. But that would be the effect of the rule, if a party to the note, might, while it was held by the payee, testify to facts which would not constitute a defence against an innocent endorsee, but not to any thing which would avoid it provided it had been endorsed to an innocent holder. Whether the testimony of parties to a note or bill, who have no interest in the suit, may not be considered as competent in all cases, may well be left to further consideration. *Walton* vs. *Shelley*, 1 *D. & E.* 296, which first established the exclusion in England, has been long overruled. *Winton* vs. *Saidler*, 3 *Johns. Cas.* 185, which was founded on Walton vs. Shelley, has shared the same fate. 5 *Cowen* 23, *Stafford* vs. *Rice; ditto* 153, *Bank of Utica* vs. *Hilliard;* 3 *Wendell* 416, *Williams* vs. *Walbridge.* And *Churchill* vs. *Suter*, 4 *Mass. Rep.* 156, although not overruled, has been somewhat qualified in its operation by *Fox* vs. *Whitney*, 16 *Mass. Rep.* 121.

Upon the motion for a trial by jury, we are of the opinion that a defendant in chancery has a right, by the constitution, to have matters of fact, alleged in the bill and denied by the answer, tried by a jury, if they are material to the decision of the cause, and the application is seasonably made. *Const. of N.H., Bill of Rights, Art.* xx. At what stage of the proceedings the application must be made, in order to entitle the party to an issue, as a matter of right, we do not now determine. The issue in such cases is to be made up under the direction of the court, (7 *Pick.* 369) and sent to the common pleas for trial ; and a question arises, what evidence is to be

used on the trial there ? We are not aware of any rule which will require us to admit the parties to go into oral testimony before the jury, after the testimony has been taken for the case and published, and of course closed. It has always been the practice of the court to regulate the admission of testimony ; and when the parties have rested, and have no further evidence which they then propose to offer, to make an order that the testimony shall be considered as closed, after which the parties have no right to insist upon the production of further evidence.

The manner of proceeding to the trial of issues from chancery is under the control of the court. Orders may be made respecting the admission of testimony, and an order may be made for the examination of one or both of the parties ; but this may be refused. *Gresley's Eq. Evid.* 402, 404, *cites* 1 *Jac.* 516, *De Tastet* vs. *Bordenave ;* 2 *Ves. Sen.* 232, *Clavering* vs. *Clavering ;* 15 *Ves.* 176, *Palmer* vs. *Lord Aylesbury ;* 1 *Swanst.* 166, 171, *Gordon* vs. *Gordon ; ditto* 39, *Rogerson* vs. *Withington ;* 1 *Ves. & Bea.* 374, *Howard* vs. *Braithwaite.*

If the party, after the evidence has been taken for the hearing, moves for a trial by the jury, we are of opinion the case should be tried there upon the same evidence on which it would have been tried had it taken the usual course of cases in chancery, and been examined by the court, unless the court upon cause shown make an order permitting further evidence to be introduced. Any other course would lead to great abuse, as one party might, (after the other had prepared all his evidence for a hearing, and the evidence was closed and published, as in this case) by insisting on a trial by jury, open the whole case again ; and not only produce additional witnesses, but thereby compel the adverse party to produce before the jury all the witnesses whose testimony he had already taken, in the proper course, to be used on the hearing.

The defendant's counsel will therefore point out what facts he is desirous to try by the jury ; and the court, if the facts

are controverted and material, will direct issues to be formed and sent to the common pleas, there to be tried upon the evidence taken to be used on the hearing in chancery.

The motion for an issue to the jury having been withdrawn, and the case submitted to the determination of the court, we have attentively examined the evidence which has been introduced.

The bill alleges, and the proof shows, that the defendant knew of the purchase by the plaintiff, and that he made no objection—that he knew the plaintiff was making repairs, &c., and said nothing about his mortgage ; and it is suggested that the defendant for this reason ought to be precluded from setting up his mortgage. If the defendant's claim had been under an absolute deed, there would have been great force in this position. 6 *N. H. R.* 521, *Morse* vs. *Child.* But the claim of the defendant being under a mortgage merely, and that mortgage on record, there would be nothing fraudulent in the defendant's standing by and seeing this done, unless he knew that the plaintiff was giving the full value of the land, and that the mortgagor was insolvent and could not pay, or something else was shown to make him a party to some deception in the matter. The plaintiff might well have made his purchase, and proceeded to repair, &c., with full knowledge that the defendant had an incumbrance, and relying upon the mortgagor to remove it, or with the intention of discharging it himself whenever it became necessary ; and the defendant might innocently have acted as the attorney of the plaintiff in the management of the estate, under such a supposition. It is very different from the case of a claim under an absolute title, which would go entirely to defeat the right of the subsequent purchaser. But such silence on the part of a mortgagee might be fraudulent where he knew that the other party had no suspicion of his mortgage ; and it may well be weighed in this case in connexion with, and in support of, the other evidence.

It is not necessary to go into a particular statement of the evidence upon the main question of fact asserted in the bill and denied in the answer. It is sufficient to say that the testimony satisfactorily proves the material matters alleged in the bill. The mortgage appears to have been originally given to cover the property from the creditors of John P. Marston ; and the note, which it purported to secure, was not long after given up by the defendant. The application for its delivery, written by the wife of said John, at his request, and in answer to which the note was sent, is put into the case. It appears that after this, and about the time of the settlement of the suit commenced by John P. Marston against the plaintiff for the balance of the purchase money, the defendant procured from John P. Marston a new note, similar to the former one, and that he subsequently procured the first note, which the wife of said John had preserved, and destroyed it.

The defendant's counsel objects, that the plaintiff is not entitled to the relief sought in this bill, because he has a plain, adequate and complete remedy at law. The plaintiff might perhaps have a remedy by the ordinary proceedings at law, which would, eventually, be effectual to secure him in the possession of the estate in controversy. But it is not one adequate to the exigencies of a case of this character ; and it is well settled that a bill in equity may be maintained to set aside a fraudulent conveyance. 1 *Story's Eq.* 118 ; 1 *Sumner's Rep.* 505, *Briggs* vs. *French* ; 8 *N. H. Rep.* 425, *Dodge* vs. *Griswold.*

But the counsel for the defendant further contends, that if the plaintiff is a *bona fide* purchaser, for a valuable consideration, without notice, it is not a ground for relief, though it is a good defence in equity. Such a principle has been applied in certain cases ; as where a mortgage for $3000 was registered as if for $300, and the plaintiff, who was a *bona fide* purchaser, without notice, filed his bill to be relieved against the mortgage beyond the sum expressed in the registry, and to stay the mortgagee from proceeding to sell. 18

*Johns.* 544, *Beekman* vs. *Frost, and auth. cited* 3 *Paige* 432. It is founded upon the ground that the parties have equal equity, and that the court will not interfere. " If," says Mr. Chief Justice Spencer, " the defendant has an equal claim to the protection of a court of equity to defend his possession, as the plaintiff has to the assistance of the court to assert his right, the court will not interfere on either side." 18 *Johns.* 562. And Mr. Justice Woodworth, in the same case, remarks —" If the appellant" (who was the original defendant,) " can at law prevail against the respondents, chancery will not disturb him, because both parties being innocent, and the equity equal, it will not interfere." *Ditto* 589. In the case before us, however, there is no pretence for the application of any such principle. If the defendant had a just debt, and he neither misrepresented about it, nor pursued a course calculated to deceive, his mortgage being registered, there could be no equity for the plaintiff. And, on the other hand, if the defendant, as it appears from the evidence, took the note and mortgage originally to cover the property—if he gave up the note afterwards, and had no note when the plaintiff took his deed, and therefore no color of title, and he made no suggestion of any title when he first knew the plaintiff had purchased, but has since procured a similar note, for the purpose of setting up the mortgage against the plaintiff, either for his own benefit, or that of any other person, he not only has no equity, but is guilty of a positive fraud. The rule would be the same if a debt originally valid had been released.

And this furnishes the answer to the next objection of the defendant, that the plaintiff, being a subsequent purchaser with notice, is not entitled to dispute the title of the defendant. The plaintiff is a purchaser with notice that a mortgage had been executed by his grantor to the defendant. No actual notice of the fact is shown, but the registry of the mortgage furnished constructive notice of the existence of the deed at the time it was recorded. This of course did not, and could not, prove that there was an existing incum-

Marston
*vs.*
Brackett.

brance, when the plaintiff purchased. It was sufficient to put him upon enquiry, and to bind him if a valid mortgage did exist. 8 *N. H. Rep.* 264, *Rogers* vs. *Jones.* If he did not enquire, he is to be put in no better, nor any worse, situation than he would have been if he had. But if he had enquired at the time, he must have been told that there was no debt existing—that in fact none had ever existed—that the note which was taken had been given up, and the mortgage thus extinguished. The debt being the principal, and the land the incident, there was then no pretence of an existing incumbrance. If it might ever have been valid, it was then no better than a satisfied mortgage ; and the record being only constructive notice of the facts as they existed, cannot now avail against the plaintiff, and preclude him from disputing a title set up under the mortgage by means of a new note, given for the purpose of defrauding him.

We are not required at this time to consider any question arising under the statute of the 27 Eliz., or the law respecting voluntary conveyances. It may admit of doubt how far a registered voluntary conveyance is to be held void against a subsequent purchaser here. *Vide* 1 *Story's Eq.* 410, 411; 5 *Peters.* 280, *Cathcart* vs. *Robinson.* But the question now is, whether a party who has taken a note and mortgage, without consideration, and has afterwards delivered up the note upon which the mortgage was predicated, shall be permitted, after the mortgagor has sold and conveyed the land to a *bona fide* purchaser, to procure a new note, by collusion with the mortgagor, as a valid incumbrance, for the purpose of defrauding such purchaser.

The question needs only to be stated to make the answer apparent. The case shows a most palpable attempt at fraud, and a decree must be entered that the defendant release to the plaintiff all title and claim to the premises described in the mortgage.