## Thompson vs. Sanborn.

If a party having knowledge that he has a title to property, stands by and sees another mortgage it to a third person, to secure a debt or liability incurred at the time, without giving notice of his title, he is estopped from setting it up afterwards in a suit at law against the mortgagee.

And it will not avail him to show that the other property included in the mortgage is sufficient to pay the debt for which it is mortgaged.

If a part of the debt to secure which the property is mortgaged, was incurred at a prior time, and a prior mortgage of the same property was executed, to secure that part, of which the party claiming the property had no knowledge, it will not affect the case.

Whether it would make any difference, if the whole debt had been previously incurred, without the privity of the party whose property was thus mortgaged—*quere?*

TROVER, for a yoke of oxen.

It appeared in evidence that the cattle originally belonged to one Peter Sanborn, who sold them to one Webster, in payment of a debt, August 30, 1832; and the plaintiff, who is a son-in-law of Sanborn, bought them soon after of Webster.

There was evidence tending to show that this purchase was made by the plaintiff, for the benefit, and on the account, of Peter Sanborn.

The cattle, immediately after the purchase by the plaintiff, went into the control of said Sanborn, and were used by him upon his place, and for his benefit, the greater part of the time from August, 1832, until the conversion by the defendant, in December, 1837.

The defendant, Moses Sanborn, on the 19th of December, 1835, paid a certain debt due from Peter Sanborn, and took from him as security a mortgage of all the stock then on said Peter's place, among which was this yoke of cattle. This stock remained in possession of Peter Sanborn all, or nearly all, the time until August, 1837, at which time certain attachments were made upon Peter Sanborn's property. The officer drove up the stock to the yard, including this

yoke of cattle, and declared his intention to attach the stock. Peter Sanborn, and the plaintiff and defendant were present, and the defendant told the officer that " if he attached the stock he would follow him, as he had a mortgage of them." It was then said, by one of the creditors, that the plaintiff claimed the stock that morning as his property.

Soon after this the defendant, after conversing with Peter Sanborn, came to the plaintiff and asked him if he had any claim to the property. The plaintiff replied that " perhaps writings would show." The defendant then told him that Peter Sanborn, his father-in-law, said " that he, (the plaintiff,) did not own a hair upon the cattle." The plaintiff replied, " that his father knew how it was."

The defendant had proposed to settle the claims of the creditors, or to receipt for property which was attached on their debts, and which was not claimed by any one but Peter Sanborn, and to take a new mortgage to secure his former claim, with a mortgage of the property which the officer had attached, to secure him for the new liability he might incur, either for advances made, or as receipter of the property. After learning that the plaintiff had made some claim to the property, the defendant told him, " if he had any claim to the stock or property, he (the defendant,) would have nothing to do with settling for either of these debts, or receipting for the property attached by the officer." The witness could not say whether this was after, or before, the conversation above stated.

The defendant finally paid $50 upon one debt, and gave his receipt for the property attached on the other; and at the same time it was agreed that the defendant was to have a new mortgage of the former property, and of the property then attached and receipted for. The officer was requested to make out mortgages of the property at the time, but he said he was unaccustomed to such business; and it was agreed that mortgages should be made the next day.

Thompson *v.* Sanborn.

The plaintiff was present at the time when the receipt was given, and as the witness believed during the whole of this arrangement. New mortgages were executed the next day, in pursuance of the agreement.

This evidence, the defendant contended, showed that the plaintiff at this time had no claim to the property, and if he ever had any claim that he had lost it by not asserting his right on this occasion, and was estopped from now setting up any title to the property, as against the defendant.

The plaintiff contended that it was immaterial whether he claimed any title in the property or not, when the defendant took his new mortgages and incurred a new liability as receipter, provided the defendant was fully indemnified by such mortgages of the property, exclusive of these cattle; and that the defendant's new mortgages placed him in no worse situation as to this property than he was before.

The court instructed the jury, that the plaintiff's conduct and declarations on this occasion were to be weighed with the other testimony in the case, to show whether the cattle were in fact his or Peter Sanborn's; and if they were said Sanborn's, his title passed by the mortgage to the defendant; and further, that if an individual owning property, stands by, and permits another to sell it, without making known his title, he becomes a party to the wrong done, and is estopped from afterwards setting up title to the property, as it would be his duty to make known to such purchaser his title; and that if the defendant declared, in presence and hearing of the plaintiff, that he would incur no further liability for Peter Sanborn, in receipting for his property then attached, or in settling the actions against him, provided the plaintiff made any claim to the property named in his (the defendant's) mortgage; and that if the plaintiff made no such claim the defendant would receipt for the property attached, and settle the debt, on condition that Peter Sanborn should give him a new mortgage of the property included in his first mortgage, and also a mortgage of the articles attached, and called on

the plaintiff to know whether he made any such claim, the plaintiff under such circumstances would be bound to disclose whether he made such claim or not ; and if the defendant receipted for the property attached, and paid the debts, on an agreement that he was to have and receive new mortgages, and the plaintiff stood by, having a knowledge of the whole transaction, and made no objection, and asserted no claim to the property, he would be estopped from setting up, at any subsequent time, any claim, as against the defendant.

On these instructions the jury found a verdict for the defendant, and the plaintiff moved for a new trial.

*Christie & St. Clair,* for the plaintiff. The principal question is, whether the plaintiff, standing by, is bound under the circumstances of this case.

This is evidently a matter of equity jurisdiction. 1 *Story's Eq.* § 384 ; 2 *Hilliard's Abr.* 405, § 124. If I stand by and see a person purchase and pay, I may be bound ; but I may stand by and see a person make a voluntary conveyance. If there is no consideration, there is no prejudice.

By this operation the defendant improved his condition several hundred dollars. The court will never apply the rule in cases where the party does not suffer. If there was fraud, and it did not result in injury to the defendant, the plaintiff is not estopped ; and here was no injury to the defendant. 1 *Hilliard's Abr.* 329, 330, § 18 ; 1 *Story's Eq.* 375–377, *et seq.* ; 1 *Sumner's R.* 504, *Briggs* vs. *French ;* 2 *Sumner's R.* 383, *Bettes* vs. *Dana ;* 3 *Mass. R.* 313, *Foster* vs. *Briggs ;* 14 *Mass. R.* 434, *Barnard* vs. *Pope ;* 4 *Pick. R.* 143, *Spear* vs. *Hubbard ;* 6 *Vesey* 182, *Evans* vs. *Bicknell ;* 6 *Johns. Ch. R.* 166, *Storrs* vs. *Barker ;* 1 *Johns. Ch. R.* 344, *Wendell* vs. *Van Rensselaer ;* 2 *Hilliard's Abr.* 405, § 123. These authorities recognize the principle that there must be an actual detriment or injury.

The defendant should have understood from what was said that the plaintiff had a claim.

*Bell & Tuck,* for the defendant, contended that the instructions to the jury were right. They denied that there was any recognition of the principle contended for on the other side, that it must be shown that the party had suffered ; and argued that the defendant had a right to give up the other property to Peter Sanborn, and hold this for his security, if he saw fit. They cited *Fonblanque's Equity* 143, 144 ; 2 *Johns. R.* 589, *Niven* vs. *Belknap ; Rob. on Fraud. Con.* 130 ; *Prec. in Chancery* 35, *Rawle* vs. *Potts.*

PARKER, C. J. The plaintiff was present when the defendant paid $50 towards the debt of Peter Sanborn, on which the property had been attached, and gave a receipt for the property. He knew that this was done under an agreement that Peter Sanborn should execute a mortgage to the defendant of the oxen now in question, along with other property, to secure him for the money thus advanced, and the liability assumed, and also for other existing liabilities of Peter Sanborn to the defendant. It had been said, just previous to this, that the plaintiff had claimed some title to these oxen, and the defendant had applied to him, to ascertain whether it was a fact. His first answer was entirely vague. He said merely, that " perhaps writings would show." Being told that Peter Sanborn, who was his father-in-law, said that he (the plaintiff) did not own a hair upon the cattle, he only replied that his father knew how it was. If this is not a direct assent to what he was thus told his father-in-law alleged, it is certainly not that open dealing which the law requires upon such occasions. The plaintiff was further told by the defendant, either just before or just after this conversation, that if he had any claim to the stock, the defendant would have nothing to do with settling the debts, or receipting for the property attached ; but notwithstanding all this he stood by and saw the proposed arrangement completed, except the execution of the mortgage, without asserting title, or giving the defendant notice that he claimed title to any part of the

property which Peter Sanborn thus agreed to mortgage to the defendant. He evidently led the defendant into a belief that he had no claim to the property, and so far induced him to pay the money and sign the receipt; and he must have known this, from the express declaration made to him by the defendant, that he would do nothing about it if he had any claim to the property. If the defendant had sufficient notice to put him on enquiry respecting the plaintiff's title, he made that enquiry, and had good reason to believe that the plaintiff had none. 8 *N. H. Rep.* 264, *Rogers* vs. *Jones.*

The case, therefore, is not within the principle suggested by the plaintiff's counsel. The mortgages to the defendant are not voluntary conveyances. He is prejudiced and defrauded by the silence of the plaintiff, if the plaintiff may now hold this property, upon which he relied in part for his security. There is an actual detriment to him; and we are satisfied that this matter furnishes a good defence at law to the plaintiff's claim, notwithstanding what was said by the Lord Chancellor in *Evans* vs. *Bicknell*, 6 *Vesey* 182. *Vide* 1 *D. & E.* 762, *Opinion of Mr. Justice Buller;* 6 *D. & E.* 556, *case cited by Mr. Justice Lawrence;* 6 *N. H. Rep.* 521, *Morse* vs. *Child;* (9 *N. H. Rep.* 351, *Marston* vs. *Brackett.*) The plaintiff must have had, at that time, all the knowledge he now has respecting his title. His conduct was not occasioned by any mistake or misapprehension respecting his rights; and, in the language of Mr. Chancellor Kent, upon another occasion, when officiating as Chief Justice, " it cannot consist with the honor of the law, or with the wisdom of the administration of justice, that the fraud should remain triumphant." 10 *Johns. R.* 461, *Jackson* vs. *Burgott.* Effectual relief may be administered at law, without a resort to equity.

Nor is it any answer to this to say, or to prove, that the other property contained in the mortgages is sufficient to pay and indemnify the defendant. He had the right to judge of that. He had the right to say upon what terms he would pay the money and give the receipt; and he said he would

Thompson *v.* Sanborn.

not do it, if the plaintiff had any claim. Peter Sanborn might with equal propriety contend that part of the property mortgaged was sufficient to secure the defendant, and on proof of that fact claim and recover the residue. It is as if the plaintiff had actually become a party to the transaction, and mortgaged the oxen himself.

The fact also that the defendant had a prior mortgage of these cattle from Peter Sanborn, of which the plaintiff had no knowledge, cannot affect the case. The defendant parted with his money, and incurred the liability of receipter for the property, when he took the new mortgages ; and this was done partly on the faith that these oxen were a part of the security which he obtained for so doing. It is the same as if only one mortgage had been taken.

And it may well admit of doubt whether the case would have been different, had the new mortgage been given merely to secure prior debts, with the contraction of which the plaintiff had no concern. If there had been merely a substitution of a new mortgage for an old one which was invalid against the plaintiff's title, perhaps his silence might have been of no consequence ; but if the new mortgage was taken to secure a greater indebtedness than the first, notwithstanding it was a prior indebtedness, the mortgagee might be defrauded by his silence, as well as if the additional debt was then contracted ; for he might rely upon the mortgage thus taken, and omit to take other measures for the security of the debt.

*Judgment on the verdict.*