## MARSHALL *vs.* PIERCE.

Land was conveyed to a feme covert, who paid part of the consideration for it, from her own earnings, with the knowledge and assent of her husband. She died without issue, and after her death the husband continued to occupy the land. Afterwards, he sold and conveyed it; stating, however, that it belonged to his wife, and that he had enough land left to answer any damages. He had sometimes stated that the land was his own, and his neighbors never heard him say that he did not own it.

*Held*, that he had acquired no title to the land by adverse possession.

A deed conveyed " all the land lately owned by Parker Dole, deceased, now occupied by Thomas S. Pierce." *Held*, that land occupied by Pierce, but not owned by Parker Dole, did not pass by the deed.

Whether the rule in equity obtains at common law, that one who encourages another to purchase land, to which the former has a title, and who purchases the land, the owner not disclosing his title, is estopped from asserting any title to the land, whether he fraudulently conceals his title, or is ignorant of it, *quere ?*

But the owner is not thus estopped by witnessing a deed which he supposed conveyed the land, when in fact it was not conveyed by the deed.

Where a married woman pays, from her separate property, part of the consideration money for the purchase of land, and a conveyance of the land is made to her with the assent of her husband, her title to the land is good against all persons but the creditors of her husband.

WRIT OF ENTRY, to recover a tract of land in Atkinson. The tenant pleaded the general issue.

A verdict was taken for the demandant, for seven-eighths of the demanded premises, subject to the opinion of this court upon the following case.

It was agreed, that one Moses Dole was once the owner of the demanded premises, and that on the third day of May, A. D. 1796, he conveyed them to Elizabeth Dole, the wife of Parker Dole. There was evidence that Elizabeth Dole had worked as a tailoress for some years before her marriage, and had, in that way, accumulated some property—that she also inherited some property from her father's estate—that this money was paid in consideration, or in part consideration, for the aforesaid conveyance—and that her husband made the contract for the purchase of the land, taking the conveyance in her name. The tract of land thus purchased adjoined land previously owned by him.

Elizabeth Dole died in the year 1806, leaving no children. Parker Dole occupied the premises, by himself and his tenants, from the year 1796, when the purchase was made, until his death, in the year 1828. By his will, executed in the year 1818, he devised to his second wife, Betty Dole, during her life, the use, improvement, and income of all his real estate. He also devised to Attai Pierce, in fee, his At-

Marshall *v.* Pierce.

kinson farm, and all his lands in Atkinson, after the decease of his wife, Betty Dole.

On the 5th day of March, 1828, Betty Dole leased to Attai Pierce, to hold during her life, " all the homestead farm, and other lands lying in Atkinson aforesaid, lately owned by Parker Dole, deceased, now occupied by Thomas S. Pierce," in consideration of which, Pierce covenanted to pay an annual rent of $60.00, and to pay all the debts due from the testator, and the legacies bequeathed by his will. The lessee went into possession, and so continued until his death, three or four years since, leaving the defendant, a minor child, his sole heir. The lease was witnessed by the plaintiff, and James Knight. Betty Dole, the widow of Parker Dole, is still living.

The tenant contended that Parker Dole held the land in his own right. There was evidence that he had offered to sell the demanded premises. James Knight, a son of the person who witnessed the lease, testified that he applied to Dole to purchase a part of the demanded premises, but he refused to sell, saying that the land belonged to his wife. Shortly before his death, however, he sold and conveyed to the witness, by a deed of warranty, a few rods of the land, saying that it belonged to his wife and her heirs, but that he had left land enough on the other side of the road to make up any damages.

The tenant proved, by several witnesses, that they had lived near Parker Dole for many years, and had never heard him say that he did not own the land.

The demandant objected to this evidence, on the ground that mere silent occupation of the land by Dole was not evidence of a claim in his own right, but that he must be presumed to have been in possession according to the legal title; and, that his saying nothing to the contrary was not evidence of a claim in opposition to the legal title; and the evidence was ruled out by the court.

The demandant offered evidence that Dole asserted no title to the land except in right of his wife.

The heirs of Elizabeth Dole were James Knight, her brother, (the person who witnessed the lease from Betty Dole to Attai Pierce, of her estate in the land devised to her by Parker Dole, her husband,) and the children of Ann Philbrick, her sister. The demandant derived his title from these heirs, by deeds of quitclaim, executed for a small or nominal consideration, and those deeds conveyed to the demandant seven-eighths of the demanded premises.

The tenant moved to set aside the verdict, on account of the rejection of the evidence aforesaid, and also because James Knight, who conveyed to the demandant one half of the demanded premises, is estopped from conveying any interest therein, after assenting to the conveyance from Betty Dole to Attai Pierce; particularly, as it appeared from his evidence upon the trial, that when he witnessed the above deed he supposed that it included the demanded premises, and did not suppose, until he conveyed to the demandant, that he had any interest in the land.

*Porter*, for the demandant, on the question of adverse possession, referred to 4 *Mass.* 418; 18 *Johns.* 40; 3 *N. H.* 49; 16 *Johns.* 301; 9 *Johns.* 163, *Jackson* vs. *Sharp;* 12 *Johns.* 365, *Jackson* vs. *Waters;* 3 *Johns. Cases* 124, *Jackson* vs. *Parker;* 1 *Johns.* 156; 5 *Johns.* 66, *Byrne* vs. *Van Hoesen;* 7 *Johns.* 157, *Jackson* vs. *De Waltz.*

On the question, whether James Knight was estopped to convey a title to the demandant, he cited 1 *Story's Eq.* 376, 380; 4 *Pick.* 389; 8 *Pick.* 172; 7 *Pick.* 551, 169.

That the land in dispute was not included in the description in the lease, he said appeared from the principle laid down by Richardson, C. J., 3 *N. H. Rep.* 209.

In support of the position, that actual knowledge that the land of one was included in a deed must be proved, he referred to 3 *Pick.* 149.

*Bartlett*, for the tenant.

GILCHRIST, J. It is contended by the tenant that Parker Dole acquired a title to the demanded premises by adverse possession. The evidence of such a title arises from the fact that he had offered to sell the land. This, alone, might perhaps be considered as an assertion of title in himself; but it is to be taken in connexion with other parts of his conduct relating to the land. On one occasion, when applied to, to sell the land, he declined, saying that it belonged to his wife; and when, at last, he did sell it, he declared that it was his wife's land, and that he had left enough on the other side of the road to make up any damages. The case finds also that his neighbors never heard him say that he did not own the land.

It is very clear, from this evidence, that he made no claim to the land in his own right. He knew that he had no title, and that the land belonged to his wife; and he reconciled himself to a sale of property which he did not own, only by the reflection that he had land enough in the vicinity to supply the place of that which he had sold. And it is equally clear that the property did belong to his wife. Even if she had contributed nothing towards the consideration of the deed from Moses Dole, but her husband had advanced all the purchase money, the deed could have been avoided only by the creditors of her husband, none of whom have interfered. And there is nothing in the case which would, at any time, have authorized Parker Dole to avoid the deed; for it appears to have been made without fraud, and with his knowledge and assent.

There is nothing adverse in the manner in which his occupation commenced. He had a legal right to the possession during the coverture. As there was no issue of the marriage, his right to occupy ceased with the death of his wife. On the happening of that event, the continuance of the possession commenced under such circumstances is not presumed to be adverse. *Atherton* vs. *Johnson,* 2 *N. H. Rep.* 31. It must commence under a claim hostile to the title of the real

Marshall *v.* Pierce.

owner. *Brandt* vs. *Ogden*, 1 *Johns.* 156 ; *Jackson* vs. *Waters*, 12 *Johns.* 365. There must be evidence to show that he continued the possession adversely, aside from the occupation itself. From that alone, no inference can be made in favor of an adverse continuance of the possession, but the reverse ; for he is presumed to remain in possession under the heirs of Elizabeth Dole, who had the legal title, and this presumption must be overcome by evidence. *Lund* vs. *Parker & a.*, 3 *N. H. Rep.* 49.

In the case of *Doe* vs. *Wing*, 6 *C. & P.* 538, Mr. Justice Williams ruled, that a person occupying property in his wife's lifetime, which he got possession of by marrying her, could not be said to have held an adverse possession against her heir at law. Upon this point the authorities are all consistent with each other.

That the fact of an adverse possession is to be made out by clear and positive proof, and that every presumption is to be made in favor of the title of the legal owner, are principles every where recognized. These presumptions are to be rebutted by evidence ; and the only evidence here is, that his neighbors never heard him say that he did not own the land. It does not appear that he was called on by any one of these witnesses, to state whether he had or had not any claim to it. His occupation is consistent with a belief on his part, which probably might have existed, that he had a right to occupy as tenant by the curtesy. But the fact that his neighbors heard him say nothing about the title only proves that they knew nothing about the matter, except that he occupied. They never heard him declare that he had a title : and the absence of any claim on his part is indicated far more by his omission to say that, than the existence of a claim is shown by his omission to say any thing about it. It is very clear, therefore, that he had acquired no title by adverse possession.

But the tenant further contends, that James Knight, under whom the demandant claims, could convey no title ; because,

after witnessing the execution of the lease from Betty Dole to Attai Pierce, he was estopped from setting up any claim to the land.

The rule in chancery on this subject is well understood, and is of frequent application. There is no principle better established, nor one founded on more solid considerations of equity and justice, than that which declares, that if one man, knowingly, though he do it passively, by looking on, suffer another to purchase and expend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal rights against such person. It would be an act of fraud and injustice, and his conscience is bound by the equitable estoppel. *Wendell* vs. *Van Rensselaer*, 1 *Johns. Ch.* 354; 1 *Story's Comm. on Equity*, § 385. And this principle has been extended beyond the case of a fraudulent concealment of title, and applied to the case of one who was actually ignorant of his legal rights; who could not, therefore, make known his title at the time of the purchase, but who still has been postponed in equity to a *bona fide* purchaser. A very strong case of this character is *Hobbs* vs. *Norton*, 1 *Vernon* 136, of which Mr. Chancellor Kent says, in *Storrs* vs. *Barker*, 6 *Johns. Ch. R.* 166, that it has often been confirmed and never questioned.

The tenant contends that the rule adopted in chancery obtains also at common law, and is applicable here. It has been said that this rule did not obtain at law, and Mr. Chancellor Kent, in Storrs *vs.* Barker, seems to intimate such an opinion. Mr. Justice Wilde, in *Heard* vs. *Hall*, 16 *Pick.* 460, says, that the rule has never been adopted at law, except in Pennsylvania, where it has been introduced because the courts there have no separate equity jurisdiction. And it would seem, from the case of *Hurd* vs. *Cushing & a.*, 7 *Pick.* 176, that in Massachusetts the rule is not applicable to conveyances of land; at least, where the party is ignorant of his legal rights. The rule has been recognized in its appli-

cation to personal property, at law, in its fullest extent by Lord Denman, in the case of *Pickard* vs. *Sears*, 6 *Ad. & E.* 474 ; and also by this court, in *Thompson* vs. *Sanborn*, 11 *N. H. Rep.* 201 ; and also in chancery in the case of *Marston* vs. *Brackett*, 9 *N. H. Rep.* 336. There is also one case in this state where the rule has been applied at law, and in relation to a conveyance of land. In *Runlet* vs. *Otis*, 2 *N. H. Rep.* 167, the demandant, a mortgagee, was present at, and advised a conveyance of the premises to the mortgager, and from him to the tenant, without disclosing the existence of the mortgage, which was of an earlier date than these conveyances ; and it was held that his conduct was fraudulent, and estopped him from recovering the land against the tenant. But no particular examination appears to have been made of the question, and nothing more is said than that such conduct estopped him. And in the case of *Morse* vs. *Child*, 6 *N. H. Rep.* 521, where one who had acted as an appraiser of land set off upon an execution was permitted to show that nothing passed by the extent, it is intimated by Mr. Justice Green, that if the extent had been sufficient to pass the land, and the appraiser had asserted no claim when the extent was made, he could not have been permitted to set up a title against the extent.

As the cases now stand in this state, *Runlet* vs. *Otis* is an authority for the position, that the rule in equity has been adopted here at law in relation to conveyances of land.

It is not, however, necessary to enquire into the correctness of that decision, in this case, because the premises were not included in the description of the land leased by Betty Dole to Attai Pierce. Parker Dole devised to his wife, during her life, the use of all his real estate. He also devised to Attai Pierce his Atkinson farm, and all his lands in Atkinson, after the decease of Mrs. Dole. Under these devises, neither Mrs. Dole nor Pierce could acquire any title to lands which were not owned by the testator. We have already decided that the testator acquired no title to the demanded

premises by adverse possession, and it is not pretended that he had a title to them derived from any other source.

By the indenture of the 5th of March, 1828, Mrs. Dole leased to the tenant the land "lately owned by Parker Dole, deceased, now occupied by Thomas S. Pierce." The demanded premises are not included in the former part of the description, because they were not owned by the testator. But at this time they were occupied by Thomas S. Pierce, and cultivated by him as a part of the homestead of Parker Dole. They are, therefore, included in the latter part of the description.

The language used is sufficient to convey all the land of the testator, even if it had not all been occupied by Thomas S. Pierce. In *Radford* vs. *Southern*, 1 *M. & S.* 299, a testator devised all his farm, called Trogues farm, *now in the occupation of A. Clay.* It was held that a part of the Trogues farm, not occupied by A. Clay, would pass, because the evident intention was to pass all the Trogues farm. And if the question were, whether a part of the testator's land which was not occupied by Pierce would pass, the point would be settled by this case, and that of *Swyft* vs. *Eyres, Cro. Car.* 546. In these cases, the ambiguity arises from the doubt whether any more was meant to be conveyed than that occupied by a person mentioned. Here the question is, whether, after a sufficiently precise description of land which the party had a right to convey, the addition of another circumstance to the description will cause it to include land which the party had no right to convey. The demanded premises were not owned by the testator, and were occupied by Thomas S. Pierce. If they are included in the latter part of the description, then any other land not owned by the testator, but occupied by Pierce, will pass; indeed, all the land occupied by Pierce, from whatever source his title may be derived, must, by parity of reasoning, be included. The conveyance describes "all the land owned by Parker Dole, now occupied by Thomas S. Pierce." But Pierce occupied more and other

land than that owned by Parker Dole. Is that to pass? In order to ascertain the intent, must we first discover what land was occupied by Pierce, and consider that as included in the conveyance, and the reference to the ownership of Parker Dole as a qualification of it, a *falsa demonstratio,* which is not to affect the quantity of land conveyed; or, are we to resort to the ownership of Parker Dole, as the test? Mrs. Dole had a life estate in all the land owned by Parker Dole. She conveys, for her life, all the land owned by Parker Dole, and adds a further description, which includes land in which neither she nor her husband had an interest. It is clear that she meant to convey all the land which her husband owned; the description is plain and intelligible. It is equally clear that the latter part of the description is perfectly consistent with the former; because all that land was occupied by Pierce. As the former part of the sentence is perfect, as the latter part is not inconsistent with it, we think the latter words are merely words of suggestion or affirmation, and that we are not compelled to resort to the whole description in order to understand its meaning. *Swyft* vs. *Eyres, Cro. Car.* 546; *Roe* vs. *Vernon,* 5 *East* 51; *Woodman* vs. *Lane,* 7 *N. H. Rep.* 241; *Doe* vs. *Galloway,* 5 *B. & Ad.* 43. Consequently the opinion of the court is, that the demanded premises were not included in the description in the conveyance from Mrs. Dole to the tenant.

Knight is not estopped by witnessing the deed, from showing that his own land did not pass by the deed. Whatever result might have followed, if the premises had been included, in cases like the present, the principle is well settled. In *Morse* vs. *Child,* 6 *N. H. Rep.* 521, it was held that one who had acted as an appraiser in an extent of an execution upon land, was not estopped to say that nothing passed by the extent; and that is a stronger case than the present, for an appraiser must necessarily know more about the transaction in which he is engaged, than a witness need know of the contents of a deed which he attests.

The position, then, in which Knight stands is this : He witnessed a deed which did not convey land to which he had a title, but which, he supposed, conveyed the demanded premises, to which he had a title, although he was ignorant of his rights. Admitting that his ignorance of his rights would not prevent the operation of the estoppel, is he estopped because he *supposed*, erroneously, that the land in dispute was conveyed ? We have found no such principle, either at law or in equity. If Mrs. Dole would not be estopped from asserting her title to the land, it would be a singular rule which would estop the witness. We know no principle that would authorize us to hold, that one who stands by, and sees a deed executed which would not convey land from the grantor to the grantee, would be estopped from setting up title to it, when he had a good one, because he and the parties to the deed supposed the land would pass by the deed. The cases which recognize the rule in equity, above referred to, are those where the grantee acquires a title under the deed, and where the owner is estopped from setting up a better title at law, on account of his fraud or gross negligence, which, in such cases, in equity, is held to be equivalent to fraud.

The opinion of the court, therefore, is, that Knight was not estopped to convey a title to the demandant, and that there should be

*Judgment on the verdict.*