Wells v. Pierce.

---

## WELLS v. PIERCE.

If the owner knowingly stand by at the sale of his property by another, without objecting, he will be precluded from contesting his claim.

If the owner actively encourages the purchase of his property from another person, he will be precluded from claiming it, though he was not aware of his interest.

Equity will not be ousted of its jurisdiction, because the courts of law have adopted equitable principles.

BILL IN EQUITY. The bill alleges that, May 22, 1845, Plumer P. Wood purchased of J. B. Wood a lot of land at Great Falls, and, on the 31st of July, 1845, he purchased of G. Young an adjoining lot, and on the same day mortgaged the last lot to E. Wood, to secure $300.

On the 15th of October following, he mortgaged both tracts to L. S. Hill, to secure $400 on a note, dated April 3, 1842, $600 on a note, dated October 7, 1844, and $300 on a note of October 15, 1845.

P. P. Wood, on the 22d of October, 1845, and before, was and had been in trade, in partnership with Daniel W. Quimby, and they had a stock of goods, subject to liens and incumbrances, and certain debts due them; and they owed Chapman & Pierce, of whom Pierce is surviving partner. On that day Chapman & Pierce sued them, and attached the said goods and lands.

While the property was subject to this and other attachments, Pierce, Howe and Ammidown, representing themselves to be a committee of the Boston creditors of Wood & Quimby, investigated the affairs of that firm, and proposed to Wood & Quimby that they should give up their interest in the goods and debts, and Wood should give up his right to the land aforesaid; the committee should sell the same, as they should think best, and divide the proceeds among the creditors rateably; and Wood & Quimby should make proper conveyances of the property to such persons as the committee should sell it to. To these proposals Wood & Quimby agreed, and the committee, or some of them, bargained and sold Wood & Quimby's interest in the stock and debts, and Wood's interest in the lands, to one Furbush, for a price agreed upon between them, and agreed with him that Wood, and Wood & Quimby should make to him proper conveyances of said property; and, October 25, 1845, Wood & Quimby made to him proper conveyances of their right to the goods and debts, and Wood, by deed of quitclaim, released to Furbush his right to the lands subject to the mortgages, which mortgages Furbush agreed to pay, and Furbush accepted these conveyances, and paid Pierce, Howe, and Ammidown, the price mutually agreed on between them, believed to be $4000, and they withdrew their attachments.

January 10, 1846, Furbush released to L. S. Hill all his right to these lands, and Hill allowed him $1492, being the amount of Wood's notes to him, and gave up those notes to Wood. April 6, 1846, Hill released to W. Bedel his right to the land. April 22, 1846, Bedel conveyed, with warranty, to P. P. Wood, a part of the land, and July 23, 1846, Bedel conveyed the remaining part to E. Wood, and he allowed $335 for it, the amount of his mortgage, and gave up P. P. Wood's note.

October 16, 1849, E. Wood quitclaimed the tract convey-

ed to him by Bedel, to Wells, the complainant. Wells thereupon entered, and has since occupied it.

At the court of common pleas for the county of Strafford, in January, 1852, Pierce recovered judgment against Wood & Quimby for $1119,84, for a debt alleged to be due prior to October 25, 1845, and costs, $110,68, took out his execution, and levied it on the premises conveyed to Wells, as the property of Wood, and since claims to hold this land by his levy.

Wells denies that P. P. Wood had any right to the land, and asserts that Pierce, at the time of his levy, had full knowledge of the complainant's title.

January 3, 1853, Pierce commenced a writ of entry against Wells, to recover this land, which was entered January term, 1853, and is now pending.

Pierce pretends that Wood's deed to Furbush was fraudulent and void as to him. Wells charges that it was a good deed, and for a good and adequate consideration; that Pierce was present at the execution and delivery of it; that it was made at the request and under the direction of Pierce and Howe, and that they agreed with Furbush as to the price, and that the consideration was paid to them.

The bill prays an answer, an injunction against enforcing the defendant's levy, or proceeding in their action, and for general relief. It was filed July 30, 1853.

At the December term, 1853, the defendant filed a demurrer for four causes :

1. The bill does not contain sufficient matter of equity to entitle the complainant to relief.

2. He has an effectual and complete remedy at law.

3. No ground of equity is set forth for interposing in the suit at law, which is not cognizable at law, and of which the complainant cannot have equal benefit at law.

4. The title set up as a legal title has never been established at law.

VOL. XXVII.    33

*Christie* and *Kingman*, for the defendants.

I. The statute, which creates the chancery jurisdiction of this court, makes no provision for such a case as that presented by the complainant's bill. There is neither trust, fraud, accident or mistake alleged; nor is a discovery prayed for. The complainant sets up a legal title to the premises, which the defendant has brought his writ of entry to recover. On what ground can a court of equity interfere? and why are we enjoined?

The bill alleges, that in October, 1845, Wood & Quimby failed, owing large sums in Boston, that a compromise was made by them with a committee of the Boston creditors, and their affairs settled up; that afterwards this defendant, one of said creditors, and one of said committee, recovered judgment against Wood & Quimby, in the court of common pleas for the county of Strafford, for the sum of $1,119,84, on a demand due prior to said settlement in October, 1845, and included in said settlement. This court is already familiar with the grounds on which the judgment was recovered, the questions of law having been settled here at the December term, 1851, and reported in 3 Foster's Rep. 519. In that suit this complainant acted as counsel, and was therefore notified that the settlement with the Boston creditors was void, on account of the fraud practiced by Wood & Quimby; yet by his own showing, he bought the premises in dispute, while that suit was pending, and while they were subject to the attachment of this defendant. He cannot therefore avail himself of the settlement made by Wood & Quimby, because he had notice of the fraud; nor of the fact that the defendant was a party to that settlement, because the defendant was himself defrauded, and this court has held that contract void as against him.

" Where a purchaser has sufficient indication of fraud in the transaction to put him on inquiry, it is equivalent to actual notice." *White* v. *Williams,* 1 Paige 461.

" An interest acquired by one person by the fraud of an-

other, will not be sustained." 3 Ired. 219; 1 Harp. ch. 145; 2 Blackf. 295.

II. There is a complete remedy at law. The title of this complainant to the premises in question depends upon the validity of the contract of settlement between Wood & Quimby and the Boston creditors. That contract depends upon purely legal principles, and must be sustained in a court of law, or it cannot stand here. It can be investigated as well, and rendered as available there, as here. The evidence is not wanting, the parties are the same, the powers of the court are as ample, the action is now pending, and the burden of proof is on this defendant.

The only fraud in the case is the fraud of him, against whom both parties claim. No wrong is imputed to this defendant, and unless it can be maintained that the creditors, who were defrauded in the settlement with Wood & Quimby, are barred as against a subsequent purchaser, with express notice and full knowledge of that fraud, then this complainant cannot succeed anywhere; certainly not in a court of equity. *Russell* v. *Clark*, 7 Cran. 69; 9 Wheat 532; 7 Leigh 157; 2 Barr 67.

III. But the principal objection to this bill, and the one on which the defendant mainly relies, is that a purely legal title to the premises described, which has never been established at law, is relied upon by the complainant as the ground on which he asks for equitable relief. We rely on the following authorities.

" A party whose right to land has not been established at law, will not be protected by injunction against a suit at law to recover the land from him." 3 Green. ch. 271.

" It is a general rule that a bill brought to establish a legal title, and for a perpetual injunction, will be dismissed. The trial must be at law." 2 Green. ch. 198.

" Courts of equity have nothing to do with questions as to the legal title to land." 4 Hey. 229.

" Where parties are trying the right to land at law, and

the title of the defendant at law is a legal and not an equi-
table title, with nothing to prevent their establishing it as
fully at law as in equity, the court will not interfere, but
will leave them to establish their defence at law." *Stockton*
v. *Williams,* Walk. ch. 120.

IV. The defendants also demur, *ore tenus,* to the com-
plainant's bill, for that the complainant seeks to take advan-
tage of a contract, found by a court of law to be fraudulent,
as set out at length on the records of this court. 3 Foster's
Rep. 519.

" Where a plaintiff in equity sues to take advantage of a
contract found to be fraudulent, he is not to be sustained,
even to recover back money paid on such contract, but
ought to be left to his remedy at law." *Sims* v. *Lewis,* 5
Mumf. 29.

*Wells* and *Bell,* for the plaintiff.

BELL, J. The facts stated in the bill are to be taken as
admittted, according to the allegations, upon a demurrer.
Mitf. Eq. Pl. 14; Welf. Eq. Pl. 261; Story Eq. Pl. 292.

The substance of the bill is, that the defendant attached
the lands now in suit, then owned by P. P. Wood, subject
to mortgages, and the stock in trade of Wood & Quimby,
to secure a debt of Chapman & Pierce, of which firm the
defendant is surviving partner. He, with others, acting as
a committee of the Boston creditors of Wood & Quimby,
investigated the affairs of Wood & Quimby, and agreed
with them that they should give up their rights to the prop-
erty attached, and the committee should sell it as they
should think proper, and divide the proceeds ratably among
the Boston creditors; and Wood, and Wood & Quimby
should make the proper conveyances to the purchasers.
This arrangement was acceded to by Wood & Quimby, and
the committee agreed to sell the whole property to one Fur-
bush, at a price agreed on between the committee and him.

Wood & Quimby made to Furbush such conveyances as the committee requested, and under their direction; and Furbush. paid to the committee the price agreed on, and the attachments were discharged. The title of Furbush to a part of this land has since passed, by several intermediate conveyances, to the complainant, who is now in possession. Some years after these transactions, Pierce recovered a judgment against Wood & Quimby, for a debt alleged to be due before the sale to Furbush, and has levied his execution upon the land purchased by the complainant at second hand from Furbush, as the property of Wood; and is now pressing a suit at law for the recovery of this property.

The conveyances, under which the complainant claims to hold this property, are all set up as founded on good consideration, and executed in good faith, and at this stage of the proceedings they are to be so regarded. Many facts, real or supposed, are alluded to in the argument, which do not appear on the face of the bill, and which cannot be inferred from anything there stated; such as that the complainant was counsel in a former suit, and was notified that there was fraud in the settlement, upon which the conveyance was made to Furbush; that the complainant's purchase was made pending the defendants' attachment, &c. These matters cannot be assumed by the court to be facts in this case. They were neither alleged, admitted, nor proved. If they should hereafter appear to be facts, they may be very important to the decision of this case, but as they are not stated in the bill, they can be brought into the case only by the defendants' answer. It would be entirely unsafe for the court to assume that the facts appearing in another case decided by them, are facts existing in the case now before them, unless that appears to be the case by the allegations or admissions of the parties.

Upon the facts admitted by the demurrer, the first question is, whether the complainant has any equitable ground upon which he is entitled to ask the interposition of a court

of equity. It is a principle of equity, that if a man, who has a right to a particular property, is present at the sale of that property by another, and he does not forbid the sale, or give notice of his claim, he will not be permitted to set up his title or claim against the purchaser; provided he was aware of what was doing, had knowledge of his rights, or such information as ought to have put him on inquiry, and the purchaser had no knowledge or reason to suspect his claim. Fonb. Eq. B. 1 ch. 3, § 4; Story Eq. Jur. § 384 and seq.; Mad. Ch. Pr. 264.

There is no principle better established, says Chancellor *Kent*, in *Wendell* v. *Van Ransellaer*, 1 Johns. ch. 354, in this court, nor one founded on more solid considerations of equity and public utility than that which declares, that if one man knowingly, though he does it passively, by looking on, suffers another to purchase and expend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice, and his conscience is bound by the equitable estoppel. *Qui tacet, consentire videtur. Qui potest et debet vetare jubet.*

This principle is recognized in this State, in *Watkins* v. *Peck*, 13 N. H. Rep. 360, and in *Marshall* v. *Pierce*, 12 N. H. Rep. 127, and other cases there cited.

Upon the facts stated in the bill, we see no ground on which the complainant can be deprived of the protection of this rule. The defendant had then the same claim under which he has since made his levy; he had an actual attachment upon this property, which he withdrew; he had occasion to investigate, and had actually investigated, the affairs of Wood and Plumer, of which the state of this property was a material part. There is nothing to lead to the belief that he did not then know, or at least have good ground to suspect, all that he has since known about it.

But the case of the defendant, upon the facts admitted

by the demurrer, falls within another principle of equity, which we think clear. If the owner or claimant of property actively persuades or encourages another person, who is ignorant of his right, to purchase the property, or any right or interest in it, he will not be permitted to claim the property, or any right in it, against the purchaser; though he was not aware of his rights. It will be reckoned his fault, that he did not inquire what his rights were. *Hobbs* v. *Norton*, 1 Vt. Rep. 136; *S. C.* 2 Chan. Ca. 128; *Hunsdon* v. *Cheney*, 2 Vt. Rep. 150; *Teasdale* v. *Teasdale*, Sel. Ch. Ca. 59; *S. C.* 13 Vin. Ab. 539, pl. 4; and 1 Fonb. Eq. 151 n.; *M'Eloy* v. *Truby*, 4 W. & S. 323; *Skining* v. *Neufoille*, 2 Dess. 194; *Aills* v. *Graham*, 6 Litt. 440; *Lassell* v. *Barnard*, 1 Blackf. 150; *Storrs* v. *Barker*, 6 Johns. Ch. 166; *Dennison* v. *Ely*, 1 Barb. S. C. 610; 1 Story Eq. Jur. 377.

This principle is recognized here, in *Marshall* v. *Pierce*, 12 N. H. Rep. 133, though expressed with a doubt in the marginal note.

Here it is distinctly alleged that the bargain for the sale of the property of Wood & Quimby was made, not by Wood & Quimby, but by the committee, Pierce, Howe and Ammidown, in pursuance of the agreement that they should sell it; the price was fixed by them, and was received by them. The conveyance made by Wood to Furbush, was at their request, and agreeably to their direction. After such a participation in the sale of this property, it must be deemed a fraud in the defendant, without any excuse or justification, for none appears in the bill, to set up a claim to this property, of earlier date than Furbush's purchase. And it is one of the cases where the party should be estopped to claim his legal rights. It was gross negligence in him to take the active part he did in making this sale, without inquiring what his rights were. And gross negligence is regarded in equity as closely allied to fraud.

II. But it is objected, that the complainant has an effectual and complete remedy at law, for the injustice of which

he complains in his bill. This court has a broad jurisdiction, as a court of equity, in all cases of trust, fraud, accidents or mistakes. Rev. Stat. ch. 171, § 6. The limits of their jurisdiction in these cases are coextensive with those of the court of chancery, and other courts of equity in England. Equity, as a great branch of the law of their native country, was brought over by the colonists, and has always existed as a part of the common law, in its broadest sense, in New Hampshire. While our territory was under the colonial government of Massachusetts, there is reason to believe that the general court exercised original chancery jurisdiction. Wash. Jud. His. of Mass. 34; An. Charters of Mass. 94. Under the first royal governor of this province, Robert Mason was appointed Chancellor of the province, and among the early records are to be found bills in equity, which were heard and decided before him. 1 Belk. His. 198 and 200. In 1692, by " an act for establishing courts of judicature," it was provided, that " there shall be a court of chancery within this province, which said court shall have power to hear and determine all matters of equity, and shall be esteemed and accounted the high court of chancery of this province, that the governor and council be the said high court of chancery," &c. It is not known that this law was ever repealed, and it is supposed that the governor and council, who composed the court of appeals, continued to exercise chancery powers till the revolution.

Equity having thus always constituted a part of the law of New Hampshire, though there was a long period after the revolution when there was no chancery court, and the jurisdiction conferred on this court in 1832 being as broad as equity itself, the question whether this court will lose their jurisdiction, because there is an adequate remedy at law, is to be decided here as it would be in England. If courts of equity had jurisdiction in certain cases, for which the ordinary proceedings at common law did not then afford an adequate remedy, that jurisdiction will not be lost, because au-

thority to decide in such cases has been conferred on courts of law by statute, unless there are negative words, excluding the jurisdiction of courts of equity. *King* v. *Baldwin*, 17 Johns. 384; *Varet* v. *Ins. Co.*, 7 Paige 560; 2 U. S. Eq. Dig. Jurisdiction, III; *Cram* v. *Barnes*, 1 Md. Ch. Dec. 151.

Neither will the jurisdiction in equity be impaired by the fact that equitable principles have been adopted in the courts of law, either from necessity, in the absence of equitable tribunals, as in Pennsylvania, and heretofore in this State, or otherwise. *Sailly* v. *Elmore*, 2 Paige 497; *Mintura* v. *Farmer's Loan*, 3 Comst. 501; *Wesley Church* v. *Moore*, 10 Ban. 273.

The equitable principles before stated, it is believed, have not been generally adopted at law in the case of real estate. *Storrs* v. *Barker* 6 Johns. Ch. 166; *Heard* v. *Hall*, 16 Pick. 460; though they are said to have been adopted in reference to personal property at law. *Pickard* v. *Sears*, 6 Ad. & E. 474; *Thompson* v. *Sanborn*, 11 N. H. Rep. 201; see *Marshall* v. *Pierce*, 12 N. H. Rep. 167.

If the case of *Ranlet* v. *Otis*, 2 N. H. Rep. 167, were to be considered a case where the equitable rule was adopted at law, it would have little weight upon this question, since it was decided while no court of equity existed in New Hampshire, and while the courts were compelled to adopt equitible rules to prevent injustice. It has no tendency to prove that the same rule prevailed in courts of law differently situated.

If it were to be held that the same rules of decision exist in these cases at law as in equity, it would by no means follow that a party has that plain and adequate remedy at law which would prevent a resort to a bill in equity. A party is entitled, not merely to the principles of equity, but he may claim the advantages of the modes of proceeding, and the course of practice adopted in those courts. It is well known that equitable relief can be but very imperfectly obtained in courts of law, because the powers of those

courts, and their modes of practice, are ill adapted for that purpose. In the investigation of all questions of fraud, the discovery by the oath of the party is one of the effectual means for its detection.

The common law affords no means of obtaining such discovery, and the recent statutory provisions are but an untried experiment, which may fall much short of the discovery in chancery.

Our opinion, then, is, that the complainant is not to be sent elsewhere for justice, under the idea that he has a plain and adequate remedy at law.

III. Our view as to the second ground of demurrer is equally an answer to the third.

IV. It is said that the title set up as a legal title has never been established at law. This objection seems to us to be met by the view of the equitable ground on which the complainant's case rests, as already stated. He asks relief from the court, not on the ground that he has a legal title, but on the ground that, whether it is legal or otherwise, the defendant has taken such part in the proceedings relative to the sale to Furbush, that he has no equitable claim to be heard on that point.

*Demurrer overruled.*